## REDMAN *v*. HUDSON.
## Opinion delivered May 15, 1916.

1. MALICIOUS PROSECUTION—PROBABLE CAUSE—INNOCENCE OF ACCUSED.—Appellee was charged with the crime of perjury before a justice, upon the affidavit of appellant. *Held*, the discharge of the appellee by the justice constituted a *prima facie* showing that he was not guilty of the crime of perjury as set out in the affidavit.

2. MALICIOUS PROSECUTION—MALICE—PROBABLE CAUSE.—To recover damages in an action for malicious prosecution it is necessary that both malice and want of probable cause be shown.

3. APPEAL AND ERROR—WORDING OF AN INSTRUCTION—SPECIFIC OBJECTION.—Where an instruction is faulty only in its verbiage, the error should be reached by specific objection.

4. APPEAL AND ERROR—INSTRUCTIONS—HARMONIOUS WHOLE.—A cause will not be reversed if the charge as a whole is free from error.

5. MALICIOUS PROSECUTION—ADVICE OF COUNSEL.—Where one lays all the facts in his possession before an attorney learned in the law, and acts upon the advice of such attorney in instituting the prosecution, that is conclusive of the existence of probable cause, and is a complete defense to an action for malicious prosecution.

6. MALICIOUS PROSECUTION—DISPUTED AND UNDISPUTED FACTS—PROBABLE CAUSE.—In an action for malicious prosecution, where there is a substantial dispute as to what the facts are, it is for the jury to determine what the truth is, and whether the circumstances relied on as a charge of justification, are sufficiently established; but when the facts are undisputed, whether they are sufficient to constitute probable cause is a question exclusively for the court.

7. MALICIOUS PROSECUTION—VERDICT—NEW TRIAL.—Where the jury returned a verdict against the defendant in an action for malicious prosecution, it was error for the court to refuse to set the same aside and grant a new trial, when it appeared that the defendant had acted upon probable cause.

8. MALICIOUS PROSECUTION—ADVICE OF COUNSEL—JUSTICE OF THE PEACE—PROBABLE CAUSE.—Where it does not appear that a certain justice of the peace was a lawyer, he can not be classed as one learned in the law, and capable of giving advice upon which appellant would be justified in instituting a prosecution against the appellee for the commission of a crime.

9. MALICIOUS PROSECUTION—DAMAGES.—Evidence of the treatment that appellee received while under arrest, caused by the appellant, is incompetent in an action for damages for malicious prosecution.

10. MALICIOUS PROSECUTION—HUMILIATION—DAMAGES.—In an action for malicious prosecution, testimony in regard to the humiliation that appellee was subjected to by reference being made to the fact of his prosecution and imprisonment by his neighbors, is competent.

11. APPEAL AND ERROR—INCOMPETENT TESTIMONY—MOTION TO EXCLUDE.—
The court properly refused to exclude certain testimony as a whole
where portions of the same were competent.

Appeal from Sebastian Circuit Court, Fort Smith
District; *Paul Little,* Judge; reversed.

*T. J. Wear,* for appellant.

1. Instruction No. 2, given by the court, was erroneous for two reasons. The court undertook to tell the jury that a certain state of facts had been proven. Those facts were controverted by the pleadings and were contested in the trial. The court must not instruct the jury on matters of fact. The court also told the jury that those facts constituted a *prima facie* case showing that plaintiff was not guilty of perjury. 76 Ark. 43.

2. Instruction No. 4, given by the court, does not state the law correctly. It is ambiguous and mixed up. 32 Ark. 771; 101 *Id.* 43; 96 *Id.* 325, 330; 100 *Id.* 433; 96 *Id.* 311.

3. Instruction No. 1, asked by defendant, should have beeen given in order to show the jury that want of probable cause and malice both must concur and that the lack of either would prevent the plaintiff from recovery. 32 Ark. 176; 33 *Id.* 316; 71 *Id.* 356; 101 *Id.* 43.

4. Instruction No. 3, asked by defendant, is the law and should have been given. It was not covered in any instruction given. 33 Ark. 316; 96 *Id.* 325.

5. Instruction No. 11, asked by defendant, should have been given. It is the law. 82 Ark. 256; 71 *Id.* 362.

6. Instruction No. 4, asked, should have been given. The testimony shows that a full, fair and complete statement was made to an attorney learned in the law, and that appellant acted upon his advice. 26 Cyc. 102, 103, and notes.

No brief for appellee.

WOOD, J. Appellee sued appellant for malicious prosecution, alleging that appellant maliciously and without probable cause made an affidavit before a justice of the peace charging appellee with the crime of perjury

committed in a certain cause before a justice of the peace wherein appellant was plaintiff and appellee was defendant; that upon the affidavit of the appellant appellee was arrested and brought before the justice and committed to jail, where he remained for a long time before he was able to give bail for his appearance; that upon a trial before the justice for the crime charged against him in the affidavit he was acquitted. Plaintiff laid his actual damages at $1,500 and punitive damages at $1,500.

The appellant answered, denying specifically the allegations of the complaint and setting up that he did not make any affidavit as alleged, charging the appellee with perjury, but that he signed a statement which charged appellee with committing perjury, as alleged in appellee's complaint. Appellant further set up that he believed appellee had committed perjury and submitted all the facts to a reputable attorney, one learned in the law, and that such attorney advised appellant that appellee was guilty of perjury, and that, acting upon such advice, appellant signed the statement charging appellee with perjury, but that he did not swear to the statement. Appellant alleged that he set forth the facts in a statement, which he believed constituted perjury, and that this statement was signed by the prosecuting attorney and not by appellant; that the appellee was tried upon this signed statement by the deputy prosecuting attorney and not upon any statement that was signed by appellant accusing appellee of perjury.

It could serve no useful purpose to set out in detail and comment upon the evidence that was adduced at the trial. Such of it as may be necessary to comment on will be referred to in the opinion.

Appellant urges reversal for alleged errors in the rulings of the court in giving certain instructions on its own motion and in refusing certain prayers for instructions requested by appellant, and in the admission of certain testimony.

In the second instruction, given on its own motion, the court told the jury that the appellee was prosecuted

upon an affidavit made by the appellant and that such prosecution terminated in the discharge of the appellee by the justice before whom the prosecution was pending, and that such discharge constituted a *prima facie* showing that the appellee was not guilty of the crime of perjury as charged by appellant.

The justice of the peace testified that the appellant made an affidavit before him charging the appellee with the crime of perjury; that on such affidavit he issued a warrant, and his recollection also was that he issued a commitment; that appellee was arrested on the warrant and was afterwards brought into his court and the charge of perjury against the appellee was investigated and he was acquitted of this charge. He further testified that the affidavit was amended at the beginning of the trial, and the prosecuting attorney was present at the time.

Witness Lighter, for the appellee, testified that he had been a practicing attorney for eight years and making a specialty of criminal law; that he wrote the affidavit that the appellant signed, but that appellant did not swear to it. Witness wrote out the affidavit at the request of the justice. Appellant told the justice that he (appellant) wanted to make an affidavit, and the justice asked witness to write it out; that appellant signed the affidavit, and that the amendment was made on the original affidavit over appellant's signature, and appellant was present when the amendment was made and raised no objections to it.

Witness Watrous testified that he was deputy prosecuting attorney and did not think that he signed the affidavit after it was amended, but did not remember.

The appellant testified that at the time he signed the statement accusing appellee of perjury he believed he was guilty of perjury and still believed that he was. His testimony as abstracted does not show that he denied making the affidavit as testified to by the justice.

It thus appears that the uncontroverted testimony shows that appellant made an affidavit before a justice of the peace upon which the prosecution for perjury was

based, and that the justice, after investigating the charge, acquitted the appellee.

(1)   The court, therefore, did not err in giving instruction No. 2, as the facts upon which this instruction was predicated were undisputed, and such being the case the court correctly told the jury as a matter of law that the discharge of the appellee by the justice constituted a *prima facie* showing that he was not guilty of the crime of perjury as set out in the affidavit.   The instruction, in the form given, was the same in effect as if the court had told the jury that the facts as stated constituted a *prima facie* showing that there was no probable cause for the prosecution instigated by appellant against the appellee for the crime of perjury.

It will be observed that the instruction does not tell the jury that the facts stated therein show that the appellee was not guilty of perjury, but only declared that the facts as stated constituted a *prima facie* showing of his innocence.   The instruction was correct.   See *Wells v. Parker,* 76 Ark. 41-43.

Instruction No. 4 is as follows:  "If you find from the evidence that the defendant did prosecute or cause to procure the prosecution of the plaintiff as alleged in this complaint, and that it was without probable cause, you will find for the defendant, unless it was shown by the evidence that such prosecution was malicious."

(2)   This instruction was inaptly drawn and, to say the least, was ambiguous.   Counsel for appellant contends that the instruction told the jury that they must find for the appellee if the prosecution of him by the appellant for perjury was malicious.   But when the instruction is carefully analyzed it will be seen that such is not its meaning.   On the contrary, the effect of the instruction was to tell the jury that before the plaintiff could recover it was necessary for him to prove both a want of probable cause for the prosecution and also that the prosecution was malicious, for the first part of the instruction told the jury that the verdict should be for the defendant if the prosecution was without probable cause,

unless it was also shown to have been malicious, which was equivalent to saying that if the plaintiff only proved a want of probable cause for the prosecution he could not recover against the defendant, but that he must also show that the prosecution was malicious.

(3)   The objection urged by counsel relates purely to the verbiage of the instruction and not to its substance, and therefore counsel should have made a specific objection to the instruction.

The court, in its first instruction, told the jury: "that in order for the plaintiff to recover against the defendant he must prove by a preponderance of the evidence: (A) that he was prosecuted in a criminal action substantially alleged; (B) that the prosecution was instigated or procured by the defendant; (C) that the prosecution terminated in the acquittal or discharge of the plaintiff; (D) that it was without probable cause; and, (E) that it was malicious."

This instruction clearly told the jury that before there could be any recovery the plaintiff must show that the prosecution against him was without probable cause and that it was malicious.   In other words, that it required proof of both to warrant a recovery of damages for malicious prosecution.   The fourth instruction was manifestly intended to emphasize this idea, and when it is read in connection with the first, the jury could not have been misled thereby.

(4)   Instructions must be considered as a whole, and if, when so considered, they present a harmonious charge and correctly declare the law, independent portions of the charge will not be condemned because they contain, when standing alone, some inapt expressions or ambiguous statements.   A cause will not be reversed if the charge as a whole is free from error.   *St. Louis, I. M. & S. Ry. Co.* v. *Rogers,* 93 Ark. 564; *St. Louis, I. M. & S. Ry. Co.* v. *Carter,* 93 Ark. 589; *St. Louis. I. M. & S. Ry. Co.* v. *Lamb,* 95 Ark. 209; *Slim and Shorty* v. *State,* 123 Ark. 583.   See also cases collated in Vol. V. Crawford's Dig., 848 G, *et seq.*

Appellant's prayers for instructions which the court refused were fully covered in the instructions which the court gave. The instructions of the court correctly declared the law, and to have given appellant's prayer would have been but a repetition of the same principles in different words.

Among other instructions given by the court was the following: Number 8. "If the defendant caused or procured the prosecution of the plaintiff, and you believe from the evidence before doing so he used reasonable diligence to ascertain the truth, and fairly and fully communicated to counsel, J. D. Lighter, all the facts within his knowledge, and that in instigating and causing the prosecution of plaintiff, if the evidence shows that he did so, and that he acted in good faith upon the advice of counsel, you will find for the defendant."

The appellant testified that he went to see Lighter and made a full, fair and complete statement of all the facts in regard to what Mr. Hudson had sworn and all the facts brought out in court at the trial of the civil suit, and that Mr. Brackett was also with him at the time and that Mr. Lighter told him that under his statement Hudson was guilty of perjury; that at the time he signed the statement accusing Hudson of perjury he believed that he was guilty of perjury and still believed that he was; that he told Lighter all he knew about the case.

Brackett testified that he went to Mr. Lighter's house with Mr. Redman, and while there told Mr. Lighter that he did not owe Hudson anything and that he did not stand good for groceries to Redman for Hudson, and that Mr. Lighter advised Redman, in witness' presence, that in his (Lighter's) opinion, Hudson had committed perjury. But Lighter did not advise Redman to prosecute Hudson at all.

Lighter testified that after the civil suit was disposed of, Redman came to his house with Brackett, and while there they explained all the facts connected with that suit and the controversy, and after they had explained all the facts witness, as an attorney, advised Red-

man that Hudson had committed perjury; that he did not advise Mr. Redman to file the affidavit or to start a prosecution; but only advised him that from all the facts in the case Mr. Hudson had committed perjury in the suit wherein Mr. Redman had sued Mr. Hudson.

Appellee permitted these witnesses to testify without objection that they explained all the facts connected with the civil suit to Mr. Lighter, the attorney; that appellant made a full, fair, free and complete statement in regard to what Hudson had sworn to and all the facts brought out in the civil suit. As appellee did not object to the testimony in this form, and did not demand that the witnesses state what facts they told Lighter, this was tantamount to an acquiescence on his part that appellant had made in good faith a full statement of the facts to the attorney. It must be taken, therefore, as the testimony is presented in the record, that appellant stated to Lighter what the testimony of Hudson was on the trial of the civil suit and what his own testimony was, and that Redman made a full, fair, free and complete statement of all the facts in regard to what Mr. Hudson had sworn to and all the facts brought out in court at the trial of the civil suit.

It must be held, therefore, that there is no conflict in the evidence on the issue as to whether or not the appellant made a full and complete statement of all the facts as they were brought out both by the appellant and by the appellee on the trial of the civil action, to the attorney. Lighter, before instituting the prosecution against the appellee for perjury, and the evidence is undisputed that Lighter advised the appellant, after hearing the statement of these facts, that appellee had committed perjury.

(5-6)  The general rule is that where there is a substantial dispute as to what the facts are, it is for the jury to determine what the truth is, and whether the circumstances relied on as a charge or justification, are sufficiently established. But, where the facts are undisputed, whether they are sufficient to constitute a probable cause

is a question exclusively for the court. 26 Cyc. 106-7-8. It is the well settled doctrine of this court that where one lays all the facts in his possession before an attorney learned in the law, and acts upon the advice of such attorney in instituting the prosecution, this is conclusive of the existence of probable cause, and is a complete defense in an action for malicious prosecution. *Price Merc. Co. v. Cuilla,* 100 Ark. 318; *Kansas & Texas Coal Co. v. Galloway,* 71 Ark. 351. See also, *St. Louis, I. M. & S. Ry. Co. v. Wallin,* 71 Ark. 422; *Price v. Morris,* 122 Ark. 382; 183 S. W. 180; *Laster v. Bragg,* 107 Ark. 74.

(7) The testimony of appellant was to the effect that he believed at the time he instituted the prosecution against the appellee for perjury that he was guilty of perjury. Whether the appellee was in fact guilty of perjury or not, if the appellant believed that he was, and so believing, made a full and complete statement of all the facts to the attorney, Lighter, and acted upon the latter's opinion in instituting the prosecution, then appellant would have probable cause and a complete defense. There is nothing in this record to warrant a finding that appellant did not make a full and complete statement of the facts to the attorney and that the attorney did not advise him that appellee was guilty of perjury and that he did not act in good faith upon such advice. The testimony on this issue, as to whether or not appellant had probable cause, being undisputed, the court could have so instructed the jury as matter of law. However, as the court submitted this issue to the jury, their verdict on the issue was contrary to the undisputed evidence.

One ground of the motion for a new trial was that the verdict of the jury was contrary to the evidence. The court, therefore, erred in not setting aside the verdict and granting a new trial on this ground.

(8) The court refused to permit appellant to testify that he consulted with a justice of the peace and told him all about the facts which constituted the prosecution against the appellee for perjury. It is not shown that the justice of the peace was a lawyer and he therefore

could not be classed as one learned in the law and capable of giving appellant advice upon which he could be justified in instituting the prosecution against the appellee for perjury.

Appellee testified to the effect that after he was arrested on the warrant charging him with perjury he was put in jail and that the inmates made fun of him and greatly humiliated him; that it was the first time he was ever in jail; that his wife was sick at the time and he had no way to communicate to her and did not have any way to get out and make bond; that he suffered great mental pain and anguish while in jail; that he was greatly humiliated after he was released from custody by his neighbors and friends and his neighbor's children referring to the fact that he had been in jail.

The appellant moved to exclude all this testimony, which the court refused and to which ruling the appellant excepted, and makes this ruling one of his grounds for a new trial.

(9) The insults that were offered to appellee while in jail were not competent to enhance his measure of damages. The appellant had no control over the jailer and it was the jailer's duty to see that the prisoners in his custody received proper treatment. That appellee was not treated with proper consideration by the inmates of the jail was the fault of the jailer and testimony to the effect that appellee was humiliated on account of the treatment he received by the inmates of the jail is too remote to be considered as an element of damages. See 26 Cyc., pp. 102-3, note 78; *John Zebley, Jr., v. John W. Story,* 117 Pa. St. 478.

(10) The testimony in regard to the humiliation that appellee was subjected to by reference being made to the fact of his prosecution and imprisonment, by his neighbors was competent as these were but the natural and probable consequences to be anticipated from such prosecution. See 26 Cyc. 102, and cases cited in note 76.

(11) Motion was made to exclude the testimony as a whole. The court did not err, therefore, in overruling

the motion. To have had the benefit of a ruling appellant should have moved the court specifically to exclude that part of the testimony which was incompetent. See *Kansas City So. Ry. Co.* v. *Leslie,* 112 Ark. 305. Moreover, the only effect this testimony could have had would have been to enhance the damages, and inasmuch as the appellant does not claim that the verdict was excessive either for actual or punitive damages, and did not make excessiveness of the verdict one of the grounds in his motion for a new trial, no reversible error could be predicated upon the ruling of the court in admitting the above testimony.

For the error indicated, the judgment is reversed and the cause is remanded for a new trial.

McCulloch, C. J. (dissenting). It is conceded that the court gave the jury correct instructions on the subject of what constitutes probable cause for a prosecution. The point of the controversy between the parties with respect to which Hudson is alleged to have sworn falsely, in the prosecution instituted against him by Redman, is whether or not Hudson had purchased a certain bill of goods from Redman. Redman sued Hudson before a justice of the peace for the price of the bill of goods, and in the trial which resulted there was a conflict in the testimony on the point at issue, Redman's testimony being to the effect that he had sold the goods directly to Hudson, and the latter testifying that he did not buy the bill of goods from Redman, but that the goods were purchased from Redman by one Brackett, who was a partner of Hudson's. This disputed fact was one within the personal knowledge of the two parties, and one or the other of them has misstated the facts in the trial below of the present case, for there was a sharp conflict in their testimony on that point. The jury have, however, settled that conflict by returning a verdict in Hudson's favor. The jury necessarily found by their verdict that Hudson told the truth about it and

that Redman did not state the facts correctly when he testified that he sold the bill of goods directly to Hudson.

In the trial below, Redman, after relating his version of the facts concerning the original controversy, stated that before instituting the prosecution he stated those facts to his attorney, who gave him an opinion to the effect that upon that state of the case Hudson was guilty of perjury, and that a prosecution against him could be maintained. The attorney also testified that Redman related those facts to him and that upon the latter's statement he advised that Hudson was guilty of perjury. It is true there is no controversy over the fact that Redman did state his side of the case to his attorney, and also stated what had occurred at the trial, but the jury have found by their verdict that Hudson misstated the facts about the original controversy; and that he obtained the advice of his counsel upon a misstatement of the facts.

It is difficult for me to see how the majority comes to the conclusion, therefore, that the facts of the case which tended to establish probable cause are undisputed, when we find that there was a direct conflict between the testimony of the two parties themselves as to what the facts were. "All authorities agree that all facts of which defendant had knowledge must be stated," in order to constitute probable cause for a prosecution alleged to have been malicious. 26 Cyc. 34. If, therefore, Redman told his attorney that Hudson had purchased the bill of goods from him, it constituted, according to the conflicting testimony of Hudson, a misstatement of the facts, and therefore could not have afforded probable cause for the prosecution. If any court has ever decided that a man can make probable cause for a prosecution by a misstatement of the facts to his attorney, the case has never been brought to my attention, but that is, however, the necessary effect of the decision of the majority in the present case, for they entirely ignore the conflict between the testimony of the two parties to this controversy, and hold that Redman is exonerated from a wrongful prose-

cution merely because he went to an attorney and obtained his opinion, upon his own misstatement of what the real facts of the controversy were.

The position of the majority is not aided at all by the fact that it may be treated as undisputed that Redman gave his attorney both sides of the controversy, for his own testimony here shows that he told his attorney what he claims to be the truth now, that Hudson had in fact purchased the goods from him, and the testimony of Hudson tended to show that that is not true and the jury have sustained Hudson on that point. It is entirely beside the question to refer to the general statement of Hudson concerning what he had said to his attorney in procuring the opinion, for even if it be conceded that Hudson waived the requirement for Redman to detail more accurately the particular statements that he made to his attorney, it does not follow that that makes the testimony of Redman and his attorney, bearing on the question of probable cause, undisputed. The sharp conflict in the testimony concerning the material facts, whether or not Hudson bought the bill of goods from Redman, can not be eliminated by any process of reasoning such as is adopted in the opinion of the majority.

It seems to me that in all malicious prosecution cases hereafter, all that will be necessary for a defendant in a case of that sort to do is to show that he had made his own statement of the facts to his attorney and procured an opinion, and that necessarily will constitute probable cause, whether he stated the facts correctly or not.

Mr. JUSTICE SMITH concurs in the dissent.