COOK v. CAVE.

Opinion delivered March 31, 1924.

1. CONTRACTS—MODIFICATION OF WRITTEN CONTRACT.—Parties to a written contract may, subsequent to its execution, modify it and substitute a valid oral agreement.

2. LANDLORD AND TENANT—REDUCTION OF RENT—BURDEN OF PROOF.— In an action for rent due under a written lease, where defendant alleged an oral agreement to reduce the rent, the burden was on her to prove such verbal contract, supported by a consideration, was entered into between herself and the landlord after execution of the written lease.

3. LANDLORD AND TENANT—REDUCTION OF RENT—CONSIDERATION.— Exercise by a tenant of an option to renew the lease would be a good consideration for a contract for reduction of the rent, if the new contract were otherwise valid and binding.

4. FRAUDS, STATUTE OF—CONTRACT NOT TO BE PERFORMED WITHIN YEAR.—A verbal agreement by a landlord to reduce the rent from the date thereof, in consideration of the tenant's exercising her option to renew the lease for another year from a date more than a year later, is void under the statute of frauds (Crawford & Moses' Dig., § 4862, subdiv. 5).

5. FRAUDS, STATUTE OF—POSSESSION UNDER VERBAL LEASE.—Where no acts are performed clearly showing that a tenant's possession is continued under a new oral agreement within the statute of frauds and materially changing the terms of a written lease, such possession will be referred to the written lease and will not take the oral contract out of the statute of frauds.

6. FRAUDS, STATUTE OF—PLEADING AS DEFENSE.—A denial in plaintiff's replication of having made a new verbal contract of lease, which was set up in the answer, is a sufficient denial of the new contract to let in the statute of frauds.

7. LANDLORD AND TENANT—SUIT FOR RENT AND LIEN—DEFENSE.—In a suit in equity for rent and to enforce a landlord's lien, it was error to sustain lessee's defense of an oral agreement for renewal of the lease for a year to begin in the future, such agreement being within the statute of frauds.

8. LANDLORD AND TENANT—RECEIVERSHIP—COST.—Where a lease of ground gave the landlord a lien on the tenant's building and furniture for unpaid rents, such lease was in effect a chattel mortgage, and in an action for rents the cost of a receivership, to which defendant did not consent and which was unnecessary, was properly charged against plaintiff.

9. RECEIVER—FEE.—Where a deputy sheriff as receiver of a hotel rendered merely supervisory service, and continued to discharge the duties of his office, receiving the same salary therefor, a fee of $500 as receiver *held* sufficient.

Appeal from Union Chancery Court; *J. Y. Stevens*, Chancellor; reversed.

### STATEMENT OF FACTS.

This was an action of unlawful detainer by J. R. Cook against Mrs. Belle Cave to recover the possession of two lots, together with a hotel building situated thereon, in the town of El Dorado, Arkansas. The defendant was given notice under the statute to deliver possession of the property to the plaintiff, and the bond required by statute was also executed. The complaint was filed on the 25th day of April, 1922.

The defendant filed an answer in which she denied that the plaintiff was entitled to the possession of the property in question, and claimed the right of possession in herself under a lease executed to her by the grantor of the plaintiff. By consent of the parties the case was transferred to the chancery court. Upon application of the plaintiff, a receiver was appointed, who took charge of the hotel and operated it.

On the 12th day of December, 1922, the plaintiff filed an amendment to his complaint, asking for judgment for twelve months rent at the rate of $412.50 per month, and that a lien be declared upon the hotel building, furniture, fixtures, and equipment therein, for the amount of said rent. It appears from the record that on the 12th day of

February, 1921, G. E. Lindsay leased to Mrs. Belle Cave the lots in question for a term of two years, with a rental of $425 per month, payable in advance. It was also provided in the written contract that the lessee should erect a building on the premises, including a store. A clause of the lease also provided that the lessee should have the right of renewing the lease for a period of one year from the expiration of its term, upon the same terms and conditions as the original lease. Another clause provided that the building erected on the leased lots might be used for living and sleeping-rooms.

Another clause provided that, at the expiration of the lease, the lessee should have the privilege of moving from said leased lots all of the improvements placed thereon by her. The lessee erected a hotel on said leased lots, and, after furnishing it, operated the hotel herself. It had thirty-five sleeping rooms, and was known as the Elk Hotel. J. R. Cook purchased the lots on which the hotel was situated, from G. E. Lindsay, on June 23, 1921, and received a deed thereto. He purchased the property subject to the lease executed by Lindsay to Mrs. Belle Cave, and knew that Lindsay had agreed to accept $412.50 as the monthly rental instead of $425, because Mrs. Belle Cave had to move one side of her building about twelve inches. Cook continued to collect $412.50 rent up to January 1, 1922, and Mrs. Belle Cave owed him for twelve months' rent at the time the case was tried in December, 1922. Mrs. Belle Cave refused to pay Cook the monthly rental of $412.50. She tendered him $312.50, claiming that she had made a new agreement with him whereby he had reduced the rent one hundred dollars per month.

Cook denied having made any agreement whatever to reduce the rent, and demanded the rent provided for in the lease from Lindsay to Mrs. Belle Cave. Upon her refusal to pay, he instituted this lawsuit.

Mrs. Belle Cave was the principal witness for herself. According to her testimony, on February 1, 1922, she made an oral agreement with J. R. Cook that he

would reduce the rent one hundred dollars per month, in consideration of which she agreed to exercise the option given her in the lease and renew it for an additional year. In other words, the agreement was that the lease should be extended one year from the end of the term in the lease from Lindsey to Mrs. Belle Cave, and she should pay rent from the date of the new agreement at the rate of $312.50 per month, payable in advance. Mrs. Belle Cave tendered this sum to Cook, and he refused to accept it, denying that he had made any new agreement with her whereby the rent was to be reduced from the amount provided in the original lease. Other facts will be stated in the opinion.

The case was determined by the chancellor on the 18th day of December, 1922, in favor of the defendant, Mrs. Belle Cave, and a decree was entered in her favor adjudging that she recover $2,850, and that the possession of the leased property should be restored to her. To reverse that decree, the plaintiff has duly prosecuted an appeal to this court.

*E. W. McGough,* for appellant.

The appointment of a receiver was necessary to save the property from injury or threatened loss. R. C. L., vol. 23, p. 18. The burden was on appellee to show a contract covering the rent other than what was in the written contract. This she has failed to do. Parol testimony is inadmissible to vary, qualify or contradict a valid written contract. 85 Ark. 135.

*Jordan Sellers,* for appellee.

Appellant was not entitled to a forfeiture or to maintain the action in unlawful detainer, since the lease itself contained a provision that the remedy of the plaintiff should be by lien on the building and furnishings. See 59 Ark. 405; 97 Ark. 537; 100 Ark. 565. In cases where there is a *bona fide* dispute as to the amount of rent, and rent is not paid for that reason, there is no forfeiture of the lease that would entitle the lessor to maintain unlawful detainer. 65 Ark. 528; 31 Ark. 296. The appointment of the receiver was unauthorized in an

unlawful detainer case. 49 Ark. 117. A proper notice to quit is jurisdictional, and must contain a proper description of the property sought to be recovered. 1 Ark. 480; C. & M. Dig., § 4838; 19 Cyc. 1143-4. The statutes must be strictly construed in unlawful detainer cases. 9 Ark. 441. There was no court order appointing a receiver, and the minutes of the judge's docket showing this appointment by consent are not sufficient. 49 Ind. 126; 120 Ala. 412; 2 Tex. Civ. App. 157; 26 Ark. 653; 10 Ark. 483; 9 Ark. 67; 4 C. J. 100. If such an order was made, it should have been entered *nunc pro tunc.* 43 Tex. 458. The court was justified in allowing the receiver's fee. 34 Cyc. 511-512, and note 18.

HART, J., (after stating the facts). It may be stated at the outset that the plaintiff brought an action of unlawful detainer against the defendant in the circuit court, and, by consent of the parties, the cause was transferred to the chancery court. Subsequently the plaintiff amended his complaint to recover judgment for the amount of rent due him under the written lease, and to ask that the amount recovered be declared a lien upon the hotel building, furniture and fixtures therein, as provided in the written lease. As a defense to the suit in this form, the defendant pleaded the terms of a new oral agreement which she alleges was entered into between herself and the plaintiff, in substitution of the written lease, which is the basis of the plaintiff's suit.

It is well settled in this State that parties to a written contract may, subsequent to its execution, modify it and substitute a valid oral agreement therefor. *Ozark & Cherokee Central Ry. Co.* v. *Ferguson,* 92 Ark. 254; *Weaver* v. *Emerson-Brantingham Implement Co.,* 146 Ark. 379, and cases cited; and *Dierks Special School Dist.* v. *Van Dyke,* 152 Ark. 27.

It is the contention of the defendant that there was a verbal agreement between herself and Cook modifying the written lease and reducing the rent to $312.50 per month. The written lease provides for the payment of $425 per month, which, it is conceded by the lessor, was

reduced to $412.50 per month. The written lease must control the rights of the parties, unless it was changed, subsequent to its execution, by a valid oral agreement. In order to show the change or substitution of a new lease for the old one, it was incumbent upon Mrs. Belle Cave to show that a subsequent valid verbal contract was entered into between herself and Cook, which was supported by a consideration. In this connection it may be stated that the exercise of her option to renew the lease for an additional year, as testified to by Mrs. Belle Cave, would be a good consideration for a reduction of the rent, provided the new contract was valid and binding in other respects. 1 Underhill on Landlord and Tenant, p. 554; Tiffany on Landlord and Tenant, vol. 1, p. 1055, and 16 R. C. L. p. 1162.

While the agreement on the part of Mrs. Belle Cave to exercise her option to renew the lease for an additional year was a good consideration for a reduction of the rent, still the new agreement, being a verbal one, was invalid under our statute of frauds. See subdivision 5, § 4862 of Crawford & Moses' Digest. In making this statement we are not unmindful of the cases of *Higgins* v. *Gager,* 65 Ark. 604, and *Alexander-Amberg & Co.* v. *Hollis,* 115 Ark. 589. In those cases a lease was made to commence at a period of time in the future and to run for one year from that date. The court held that the time between the making of the lease and its commencement in possession could not, under the statute, be taken as a part of the term granted by the lease. Hence the oral contract for the lease of the land for one year, to commence at a date subsequent to the making of the contract, was not within the statute of frauds.

In the case at bar the facts are essentially different. According to Mrs. Belle Cave, the new agreement was made on the first of February, 1922, and the lease was to continue for an additional year after the 12th day of February, 1923; but the provision for the reduction of the rent was to commence at the date of the new agreement. This had the effect of the parties attempting to

make a new agreement to commence at once and extending over a period of more than one year. The provision in the new contract for a reduction of $100 per month on the rent, to commence at once, was an attempted substitution of a new agreement for the old one, and was void under the statute of frauds, because it extended over a period of more than one year.

The defendant alleged a change in the terms of the lease, and the burden of proof was upon her to show it. She relied upon a new contract providing for a reduction of the rent as a defense to the action, and, having failed to establish a valid contract reducing the rent, it follows that the court erred in finding in her favor that such a contract was made. *Wheeler* v. *Baker* (Iowa), 12 N. W. 767; *Weber* v. *Powers* (Ill.), 68 L. R. A. 610; *Emery* v. *Boston Terminal Co.,* 178 Mass. 172, 86 Am. St. Rep. 473; *Crawford* v. *Wick,* 18 Ohio St. 190, 98 Am. Dec. 103; *Falk* v. *Devendorf* (Wis.), 177 N. W. 894; 20 Cyc. p. 214; and 27 C. J., p. 210-211, §§ 179-180.

The possession of the leased premises was continuous and unbroken, and is referable to the old as well as to the new lease. It results, from the authorities cited above, that, in case of an oral agreement materially changing the terms of the old lease, if no acts are performed which clearly show that the tenant's possession is continued under the new oral agreement, such possession will be referred to the original lease, and such oral contract will be void. Under subdivision 5 of § 4862 of Crawford & Moses' Digest, no action shall be brought to charge any person upon any lease of lands for a longer term than one year.

The plaintiff predicated his right to recover upon a valid written lease. The defendant pleaded, by way of defense, a new verbal contract, which we have held void under the statute of frauds.

The plaintiff filed a reply to the answer, in which he denied making the new verbal agreement with the defendant. The denial in the replication of the plaintiff of the making of the oral contract on which the defendant based

her cross-action is as effective for letting in the defense of the statute of frauds as if the statute had been specifically pleaded. The reason is that the reply denied the existence of any new agreement, and it was incumbent upon the defendant to prove a legal agreement, which, in cases within the statute of frauds, must be a written one. *Wynne* v. *Garland,* 19 Ark. 23; *Trapnall* v. *Brown,* 19 Ark. 39; *Stanford* v. *Sager,* 141 Ark. 458; *Dunphy* v. *Ryan,* 116 U. S. 491, 25 R. C. L. par. 398, p. 746, and 27 C. J., pp. 369-372.

We think it clear, upon principle, under our statute of frauds and system of pleading, that it is sufficient to deny the contract without referring to the statute. Where the pleadings present the issue of agreement or no agreement, the party relying upon the agreement must prove a valid one. If the plaintiff had admitted that a verbal agreement had been made as alleged by the defendant, then he must have pleaded the statute of frauds in order to rely upon it. The plaintiff having denied, in his reply, the oral agreement alleged in the answer, the statute of frauds became a question of fact at the hearing. Hence the denial in the replication of the plaintiff of the making of the verbal contract set up by the defendant was as effective as a special plea of the statute of frauds.

In this connection it may be stated that the defendant was never evicted from the premises. According to her testimony, when she received the notice to deliver up the possession in the action for unlawful detainer, she consulted her attorney, and he advised her to give up possession of the premises. The notice to quit was served upon her by a deputy sheriff, and she at once vacated the premises.

According to the testimony of the sheriff, when the writ of possession came into his hands, he took the matter up with his lawyer, who advised him not to serve it. The sheriff then took the matter up with the defendant's attorney, and informed him that he would not serve the writ of possession upon the defendant. The sheriff stated

further that his recollection is that the defendant had already vacated the premises when the writ of possession came into his hands. She vacated the premises when the notice to quit was served on her. Hence she voluntarily surrendered the possession of the premises. While she did not consent to the appointment of a receiver, she did consent to a transfer of the case to the chancery court. Subsequently the plaintiff filed an amendment to his complaint, in which he asked for a judgment for the rent which had accrued, and that the amount thereof be declared a lien upon the hotel property and the furniture and fixtures therein.

It follows that the chancellor erred in sustaining the defense of the defendant, and that he should have rendered a decree in favor of the plaintiff for the amount of rent due and unpaid under the original lease.

With regard to the receiver, but little need be said. While the defendant consented to the transfer of the case to the chancery court, she did not consent to the appointment of a receiver. The appointment was made upon the application of the plaintiff, and there is no allegation in the bill which made the appointment necessary. By the terms of the lease the plaintiff had a lien upon the building and furniture for the amount of the unpaid rents. This provision created in equity a chattel mortgage on said property, and the appointment of a receiver was unnecessary. *Mitchell* v. *Badgett,* 33 Ark. 387. Therefore the cost of the receivership was properly charged against the plaintiff.

The plaintiff claims, however, that the amount of fee allowed to the receiver by the chancellor was excessive, and in this contention we think he is correct. The receiver was a deputy sheriff, and, during the whole period of his receivership, he discharged the duties of that office and received the same salary which he had been paid before he was appointed receiver. He did not have active control of the management of the hotel, but was permitted to hire a manager to run it. His services were merely of a supervisory character, and we think the

sum of $500 would have been an ample allowance for the services performed by him.

Therefore the decree will be reversed, and the cause remanded with directions to the chancellor to enter a decree in accordance with this opinion.