J. C. ENGLEMAN, INCORPORATED, *v.* BRISCOE.

## Opinion delivered February 21, 1927.

1. PROCESS—WAIVER OF DEFECT.—When a party applies for or agrees to a continuance of the case, this makes him a party to the record, and any defect that might exist as to the service of process upon him is waived.

2. CONTRACTS—ORAL MODIFICATION OF WRITTEN CONTRACT.—Parties to a written contract may, subsequent to its execution, modify it and substitute a valid oral agreement therefor, and the change in the terms of the contract is a sufficient consideration for the execution of the new contract.

3. CONTRACTS—BURDEN OF PROOF.—Where a subsequent oral agreement was substituted for a written contract, the burden is upon the party relying upon the new contract to prove its terms.

4. BROKERS—CONTRACT OF EMPLOYMENT.—A contract employing an agent to find a purchaser for land is not within the statute of frauds, and need not be in writing.

5. TRIAL—APPLICABILITY OF INSTRUCTIONS.—The court, by its instructions, should concretely apply to the facts the principles of law applicable thereto, as shown by the issues raised in the pleadings.

6. TRIAL—SUFFICIENCY OF INSTRUCTIONS.—When the instructions given sufficiently set forth the claims of the respective parties in such concrete form as to give the jury a proper understanding of the issues raised by the pleadings, a repetition of the instructions is not necessary, and may serve to confuse and mislead the jury, as an indirect expression of the court upon the weight to be given to the evidence.

7. APPEARANCE—EFFECT OF GRANTING CONTINUANCE.—Where, in a joint suit against a corporation and its president, a continuance was asked on account of sickness by the president, who represented the corporation and was a necessary witness on its behalf as well as for himself, the granting of the continuance was for the benefit of both parties and resulted in the entry of appearance of both of them.

8. ATTACHMENT—SUFFICIENCY OF EVIDENCE.—Evidence *held* sufficient to take to the jury the question whether land attached

belonged to a nonresident corporation or to its president where lands of the corporation were exchanged for the land attached, but title to the latter was taken in the name of such president.

Appeal from Logan Circuit Court, Southern District; *James Cochran,* Judge; affirmed.

### STATEMENT OF FACTS.

S. M. Briscoe instituted this action in the circuit court against J. C. Engleman, Inc., and J. C. Engleman, Jr., to recover damages for an alleged breach of contract of employment of the plaintiff to sell real estate for the defendants.

According to the allegations of the complaint, the defendants were engaged, during the year 1923, in the business of selling land in the Rio Grande Valley, in the State of Texas, and, in the course of business, employed agents in order to induce people to go to Texas to look at said lands with a view to purchasing them. On the 3d day of August, 1923, the defendant, J. C. Engleman, Inc., entered into a written contract with the plaintiff and J. C. Engleman, Jr., to procure purchasers for their Texas lands, at a commission of fifteen per cent. of the sale price of the lands sold to purchasers procured by the agents. The instrument contained other terms relating to the contract between the parties which it is not necessary to state in order to review the issues raised by the appeal.

After the execution of the written contract referred to, the plaintiff and the defendants entered into a verbal contract whereby the defendants contracted with the plaintiff to be their agents to procure purchasers for their Texas lands. The plaintiff was given the power to employ subagents to assist him. The plaintiff earned commissions under the contract in the sum of $3,000, and sought judgment against the defendants for that amount.

The defendants denied liability under the written contract, and denied entering into an oral contract. The defendants are nonresidents of the State of Arkansas, and a writ of attachment was sued out by the plaintiff

and levied upon lands claimed to be owned by them in Logan County, Arkansas, where the suit was commenced.

S. M. Briscoe was a witness for himself. According to his testimony, the verbal contract sued on was entered into between him and J. C. Engleman, Jr., for himself and the defendant, J. C. Engleman, Inc., while they were coming back from Texas in August, 1923. J. C. Engleman, Jr., was the president and manager of J. C. Engleman, Inc., which is a foreign corporation organized under the laws of the State of Delaware. It was understood that the oral contract should be substituted for the written contract, which had been executed a few days prior thereto. The written contract was executed on the 3d day of August, 1923, and the verbal contract was made on the 17th day of August, 1923. The purpose of the verbal contract was to employ the plaintiff to procure purchasers for lands owned by the defendant in the Rio Grande Valley, in the State of Texas. The plaintiff was given the power to appoint subagents to work under him. The plaintiff was to receive as compensation for his services seven and a-half per cent. commission on the purchase price of the lands sold or procured to be sold for the defendants. According to his own testimony and the testimony of other witnesses, sales were procured by the plaintiff amounting to something over $30,000, and he was entitled to a commission of seven and a half per cent. on all these sales.

On December 30, 1923, J. C. Engleman, Inc., in a letter written to S. M. Briscoe, recognized that Briscoe was in the employment of the defendant to sell its lands, and gave him directions about carrying out a certain designated contract. Again, in 1924, the defendants wrote to the plaintiff, urging him to procure people to go down into Texas and examine their lands.

J. C. Engleman, Jr., was the principal witness for defendants. According to his testimony, the written contract executed between the plaintiff and the defendants was canceled in the fall of 1923. At the time of its cancellation they did not owe the plaintiff anything. On

the other hand, the plaintiff owed the defendants at that time. Engleman denied that the defendants owed the plaintiff anything at all, and denied making the oral contract testified to by the plaintiff.

The jury returned a verdict in favor of the plaintiff in the sum of $2,000. From the judgment rendered the defendants have duly prosecuted an appeal to this court.

*Warner, Hardin & Warner,* for appellant.

*U. C. May* and *Evans & Evans,* for appellee.

HART, C. J., (after stating facts). The defendant, J. C. Engleman, Inc., is a corporation organized under the laws of the State of Delaware, and the defendant, J. C. Engleman, Jr., is a nonresident of the State of Arkansas. They filed a motion to quash the service of summons against them and to dismiss the attachment levied on their property, and saved their exceptions to the action of the court in overruling their motion. Subsequently J. C. Engleman, Jr., president and manager of J. C. Engleman, Inc., filed a motion to continue the case for the term on the ground that he was physically disabled to attend court and was confined in a hospital in Temple, Texas, and would necessarily be confined in the hospital for an indefinite period, and that it was necessary for him to be present at the trial of the case, both for the purpose of advising his attorneys and testifying as a witness in the case. The case was continued for the term on his motion. When the case was tried, he was the principal witness for both defendants.

The object of the service of summons upon a party to a lawsuit is to apprise him of the nature of the proceedings against him. When a party applies for or agrees to a continuance of the case, this makes him a party to the record, and any defect that might exist as to service of process upon him is waived. *Rogers* v. *Conway,* 4 Ark. 70; *St. L. I. M. & S. Ry. Co.* v. *Barnes,* 35 Ark. 95; and *Sager* v. *Jung & Sons Co.,* 143 Ark. 503, 220 S. W. 801. Therefore we hold that the assignment of error of the defendants, that the judgment should be

reversed because there was a personal judgment against them in favor of the plaintiff, is not well taken.

It is next contended by counsel for the defendants that there was no consideration for the oral contract sued on. This court has held that parties to a written contract may, subsequent to its execution, modify it and substitute a valid oral agreement therefor. The change in the terms of the contract is a sufficient consideration for the execution of the new contract. Of course, the burden of proof is upon the party relying upon the new contract to prove its terms. *Cook* v. *Cave,* 163 Ark. 407, 260 S. W. 49.

In *Moore* v. *Exelby,* 170 Ark. 908, 281 S. W. 671, it was held that it is not necessary that authority to sell and make a binding contract for the sale of lands be in writing, for a contract employing an agent to find a purchaser is not within the statute of frauds; and several earlier cases are cited in support of the ruling.

In the application of these principles of law to the facts at issue in the present case, it will be seen that the plaintiff was entitled to recover, if the jury believed his testimony. According to his evidence, the oral contract was made in substitution of a previous written contract. The parties agreed to be bound by the terms of the oral contract. The plaintiff was to receive seven and one-half per cent. commission on the amount of all sales of land made by him or by his subagents for the defendants. According to the evidence adduced in his favor, sales to the amount of over $30,000 were made by the plaintiff and his subagents. At seven and a half per cent. commission, this would be more than $2,000, the amount for which the jury returned a verdict in his favor and for which judgment was rendered in his favor against the defendants.

Numerous assignments of error in the refusal of the court to give instructions asked by the defendants are urged for a reversal of the judgment. We do not deem it necessary to set out these instructions or to review them. The object of instructing the jury by trial courts is to

state and apply the law to the facts of a particular case. The court, by its instructions, should concretely apply to the facts the principles of law applicable thereto as shown by the issues raised in the pleadings. When the instructions sufficiently set forth the claims of the respective parties in such concrete form as to give the jury a proper understanding of the issues raised by the pleadings, a repetition of the instructions is not necessary, and may serve to confuse and mislead the jury. It is proper to refuse instructions embodying principles of law substantially covered by other instructions given, which fully and fairly submit to the jury in a concrete form the respective theories of the parties to the lawsuit. The reason is that, if the court should repeat in varying form the principles of law applying to a particular state of facts, the instructions might be considered by the jury as an argument by the court and as an indirect expression of the court upon the weight to be given to the evidence, which is prohibited under our Constitution. *Redman* v. *Hudson,* 124 Ark. 26, 186 S. W. 312, and *North American Union* v. *Oliphint,* 141 Ark. 346, 217 S. W. 1.

In the case at bar the issues were plain and simple. The court told the jury that the burden of proof was upon the plaintiff to show by a preponderance of the evidence that he furnished buyers that actually bought and paid for the lands of J. C. Engleman, Inc., and that he had not received his commissions for such sales. The court further stated that, if he did not establish these facts by a preponderance of the evidence, he was not entitled to recover. In other instructions the respective theories of the parties were fairly and fully submitted to the jury; and, as we have already seen, the court was not required to repeat the instructions in varying form.

We find no reversible error in the record, and the judgment will therefore be affirmed.

HART, C. J., (on rehearing). Counsel for J. E. Engleman, Inc., earnestly insist that a rehearing should be granted because the opinion of the court is contrary to

the well-known rule that the officers of a corporation are distinct and separate from the corporation itself, and that the appearance of an officer of a corporation is not an appearance by the corporation.

We are of the opinion that the peculiar facts of the case at bar make it an exception to this well-settled rule. The record shows that J. C. Engleman, Inc., is a Delaware corporation, and that the wife of J. C. Engleman, Jr., owns practically all the stock in it. The corporation was engaged in selling lands in Texas to persons in Arkansas, and J. C. Engleman, Jr., alone had charge of its affairs and conducted its business in the State of Texas. He had the authority to employ attorneys for it and to conduct its litigation. Constructive service was had upon the corporation and upon Engleman as an individual. The presumption is that both the corporation and Engleman individually were sued in order to prevent a shifting of responsibility in the premises. J. C. Engleman, Jr., was just as necessary as a witness for the corporation as he was for himself. He alone conducted the business of the corporation, and he alone could advise the attorneys of the corporation about this particular lawsuit. The continuance was had at his request, because he was sick and unable to attend court. In his motion for a continuance he stated that his presence was necessary to advise the lawyers about the conduct of the case and to be a witness in it. The interest of the corporation and of Engleman as an individual was so commingled that the same testimony would be introduced in each case, and the presence of Engleman was just as necessary for the corporation as it was for himself. Under these circumstances it is inferable that the continuance was had for the benefit of both parties and resulted in the entry of the appearance of both of them.

It is also insisted that the court erred in submitting to the jury whether the land attached in Logan County belonged to the corporation or to Engleman. It is earnestly insisted that there is no testimony in the record upon which to predicate such an instruction. We do not

agree with counsel in this contention. As we have already seen, the corporation was organized under the laws of the State of Delaware, and was engaged in selling land in the State of Texas. Practically the whole of the stock of the corporation belonged to the wife of J. C. Engleman, Jr., who alone had charge of its affairs in this part of the country. It is true that he testified that he never took any Arkansas lands for the corporation in exchange for its Texas lands. He states that he took the lands for himself. Under the circumstances, the jury was warranted in finding that the taking of the title in himself was colorable merely, and that the corporation owned the beneficial interest in the lands. It is inferable from the evidence in the record that the Texas lands of the corporation were often exchanged for lands in Arkansas. Agents were especially employed by J. C. Engleman, Jr., to sell lands to persons in Arkansas. Frequently the owners of lands in the State of Arkansas were induced to exchange their lands for lands belonging to the corporation in the State of Texas. The owners of the Arkansas lands would not convey their lands directly to the corporation, but would convey them to J. C. Engleman, Jr. It is not shown that he had any interest in the matter except as an agent of the corporation, and it is fairly inferable from all the attendant circumstances that the beneficial interest or equitable title was in the corporation. Therefore we hold there was no error in sustaining the attachment on the ground that the lands attached belonged to a nonresident corporation.

The motion for a rehearing will be denied.