## WELLS v. MOORE.

### Opinion delivered April 14, 1924.

1.  MORTGAGES—EQUITABLE MORTGAGE.—Every instrument intended to secure the payment of money, whatever may be its form, and whatever name the party may choose to give it, is, in equity, a mortgage.

2.  MORTGAGES—EQUITABLE MORTGAGE.—Where a note recited "that a lien is retained upon his [the maker's] entire interest in and to" certain lands belonging to the maker and not derived from the payee, the word "retained," in the light of the context, meant

"given" or "granted," or was meaningless, in which case it may be stricken out without impairing the sense.

3. CONTRACTS—AMBIGUITY.—Where there is ambiguity in any part, word or words of an instrument, it is the court's duty to place itself in the situation of the parties and ascertain, if possible, from the language used, what the parties meant.

4. MORTGAGES—DESCRIPTION OF LAND.—A description of land in a note giving a lien thereon as "N. R. Moore's father's land, known as the Old Marshal Farm, situated on Spring River in the Western District of Lawrence County, Arkansas," *held* sufficient as furnishing the means of identifying it.

Appeal from Lawrence Chancery Court, Western District; *Lyman F. Reeder,* Chancellor; reversed.

*Pope & Bowers* and *Schoonover & Jackson,* for appellant.

Instruments which, after reciting the existence of an obligation, purport to create in favor of the obligee a lien on specific property of the obligor to secure the performance of the obligation, have operation as equitable mortgages. 19 R. C. L. 274, par. 44; 93 Ark. 371. The form or particular nature of the agreement which shall create a lien is not very material, for equity looks at the final intent and purpose, rather than at the form. 3 Pomeroy, Eq. Jur. 1237; 31 Ark. 429; 37 Ark. 511; 51 Ark. 433; 52 Ark. 439; 60 Ark. 595; 91 Ark. 268. An agreement on the back of a note, making it a charge on particular land, is an equitable mortgage. 5 Elliott on Contracts, 4658; 51 Ark. 433. Almost any instrument in writing, intended by the parties to pledge land as a security for debt, will be treated and considered as a mortgage, although it may lack the formal requisites of a mortgage, and be insufficient to constitute a mortgage at common law, or under the statute. 27 Cyc. 1078. In an action to foreclose a mortgage, the mortgagor cannot complain of an indefinite description in the mortgage, whatever might be the effect of a sale under such description. 27 Cyc. 1193; 68 Cal. 374. Parol evidence may be introduced to show that the description, so far as it goes, is applicable to a certain parcel of land owned

by the mortgagor, and would not be applicable to any other property of which he is the owner. 27 Cyc. 1092; 63 S. W. 151; 85 Ala. 80.

*L. B. Poindexter,* for appellee.

The authorities cited by counsel for appellant have no application to the facts of this case. Parol evidence of the intention of the parties is inadmissible to vary a writing, in the absence of surprise, mistake or fraud. 10 R. C. L. p. 1018, § 210. An intended contract, not made, cannot be set up in place of one that is made. 29 Ala. 684. Parol evidence is not admissible to affect a written contract in which the parties have plainly expressed their intention. 143 Mass. 344. It is error to admit oral testimony of the intention with which a writing was executed. 24 S. C. 229. There was no error in the chancellor's decision in sustaining the demurrer and dismissing the complaint. 30 Ark. 601; 7 Ark. 255; 51 Ark. 433. The demurrer was properly filed. 7 Texas 549. The same rules of law apply to intervener as to the original defendant in the action. 66 Neb. 525. Where the intervener files his petition and gives notice to the other parties to the suit, he can claim the benefit of the original suit and has the right to prosecute it to a final judgment. 8 Tex. 74; 14 Tex. 82; 25 Tex. 289; 26 Tex. 306; 28 Tex. 501; 1st White & Wilson, 1st Tex. App. Civil 379; 31 Tex. Civil 525; 43 Fed. 565; 30 Okla. 565; 60 Tex. Civ. App. 241; 6 Nev. 287; 48 Cal. 201.

WOOD, J. The plaintiff, Wells, as administrator of the estate of Joe S. Pruitt, deceased, instituted this action against N. R. Moore and Pearle Moore on a promissory note as follows:

"$1,500.00          Ravenden, Ark., Nov. 2, 1918.

"On or before twelve months after date I promise to pay to the order of J. S. Pruitt the sum of fifteen hundred dollars, for value received, negotiable and payable without defalcation or discount, bearing 10 per cent. interest per annum from date until paid. It is agreed by the maker of this note hereof that a lien is retained

upon his entire interest in and to his father's land, known as the Old Marshal farm, situated on Spring River, Lawrence County, Arkansas, to secure the payment of this note, and he binds himself, his heirs and executors, that this lien shall be in full force until this note is fully paid, together with all interest due thereon.

"N. R. MOORE.   PEARLE MOORE."

The plaintiff alleged that this note created a lien upon N. R. Moore's interest in his father's land, known as the Old Marshal Farm, situated on Spring River, in the western district of Lawrence County, Arkansas, which land is described in the complaint according to the government survey. The plaintiff alleged that the amount of the note was past due and unpaid; that the note constituted an equitable mortgage on the lands described, and, as between the payors and the payee, constituted a valid and subsisting lien on the lands. Plaintiff prayed that he have judgment for the amount of the note, and that the lien be foreclosed to satisfy the same. A notice of *lis pendens* was filed on the day the suit was instituted.

The Bank of Ravenden (hereafter called bank), J. C. Moore and B. M. Moore intervened. They set up that on the 13th of January, 1922, N. R. Moore was indebted to the bank in the sum of $3,750, and he and his wife executed to the bank a mortgage conveying an undivided one-third interest in the land in controversy, and that John C. Moore and B. M. Moore also signed a mortgage to secure the indebtedness to the bank. The bank alleged that, when it took the mortgage from N. R. Moore, it had no knowledge of the debt due plaintiff's intestate. It set up that it was an innocent lienor, exhibited its mortgage, and prayed that it be granted relief as such. John C. Moore and B. M. Moore alleged that, in order to secure the indebtedness of N. R. Moore to the bank, they executed a note jointly with N. R. Moore conveying their undivided two-thirds interest in all the land in controversy, and that, in order to protect themselves as the sureties of Moore, they assumed the indebtedness of

Moore to the bank and bought outright his undivided one-third interest in the lands in controversy on the second day of February, 1922, and alleged that, since that date, they had been the owners of the same. They bought the same in good faith and without any notice that N. R. Moore was indebted to plaintiff's intestate, and were therefore innocent purchasers of the land in controversy. They exhibited the deed of N. R. Moore to them. The interveners prayed that plaintiff's complaint be dismissed for want of equity, and for all proper relief.

N. R. Moore and Pearle Moore, who were named as defendants in the action, were duly summoned, but failed to answer, and a decree *pro confesso* was taken against them on the day that the interventions were filed, and the cause was continued on the issue between the plaintiff and the interveners as to the priority of liens. The plaintiff, on August 28, 1922, replied to the petition of the interveners, and denied all the material allegations thereof. He alleged that, at the time the note and equitable mortgage were executed by N. R. Moore to plaintiff's intestate, Moore was cashier of the bank, and that the bank, through him, was charged with notice of the equitable lien. The plaintiff further set up, by way of affirmative answer to the petition for intervention, that, on the date of the alleged mortgage from N. R. Moore to the bank, N. R. Moore was charged with the crime of having embezzled funds of the bank, and that an agreement was entered into between him and the bank whereby Moore was to execute to the bank the mortgage set up in the petition for intervention, and the charge of embezzlement against Moore was to be dismissed and discontinued. The plaintiff therefore charged that the execution of the alleged notes and mortgage to the bank and the dismissal of the charge of embezzlement against Moore constituted the compounding of a felony, and rendered the instrument null and void.

On the 26th of September, 1922, the interveners demurred to all that portion of the plaintiff's complaint wherein it is alleged that "plaintiff has an equitable

lien on the lands embraced and described in this action.''
The interveners set up in the demurrer that the complaint in the matter set forth does not state facts sufficient to constitute a cause of action. The court sustained the demurrer, and the plaintiff declined to plead further, but stood on his complaint. The court thereupon entered a decree dismissing that portion of the plaintiff's complaint by which he was seeking to establish an equitable lien upon the lands described in his complaint. From that decree is this appeal.

In *Cox* v. *Smith,* 93 Ark. 375, we quoted from Mr. Pomeroy as follows: ''The form or particular nature of the agreement which shall create a lien is not very material, for equity looks at the final intent and purpose, rather than at the form; and, if the intent appear to give or to charge or to pledge property, real or personal, as a security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows * * * ; the form of the contract is immaterial; if the intent appears to make any identified property a security for the fulfillment of an obligation, it will constitute an equitable lien.'' 3 Pom. Eq. Jur. 1236. See also other cases there cited.

In the case of *Turner* v. *Watkins,* 31 Ark. 429, we said: ''Any instrument intended to secure the payment of money, whatever may be its form and whatever name the parties may choose to give it, is in equity a mortgage.''

In *Ward* v. *Stark Bros.,* 91 Ark. 268, we said: ''Equity requires no particular words to be used in creating a lien. It looks through the form to the substance of an agreement; and if, from the instrument evidencing the agreement, the intent appear to give, or to charge, or to pledge, property, real or personal, as a security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows.''

In *McGuigan* v. *Rix,* 140 Ark. 418, the instrument under review, which this court held to be an equitable mortgage, contained no power of sale in a trustee of the land embraced therein, nor did it contain a defeasance clause. Passing upon this instrument, we said: "It is therefore lacking in these necessary essentials to make it a technically legal mortgage. It is manifest, however, that it was intended by the parties thereto as a security for preexisting indebtedness of Hogue to said bank."

Applying the principle announced in the above case to the language of the instrument under consideration, we are convinced that it was the intention of the makers of the note to create a lien in favor of the payee on their interest in the lands described therein as the Old Marshal Farm, situated on Spring River, Lawrence County, Arkansas. The appellees contend that the words, "a lien is retained," have absolutely no meaning in the connection used. This is true if the word "retain" is given its literal signification. But it is the duty of the court, where there is ambiguity in any part, word, or words, to place itself in the situation of the parties at the time of the instrument and ascertain, if possible, from all the language used in the instrument, what the parties meant by any particular word, or words, that, taken alone, might have an ambiguous meaning, so as to give effect to the intention of the parties to be gathered from the language of the instrument as a whole evidencing the contract between them. *Wood* v. *Kelsey,* 90 Ark. 272; *White Const. Co.* v. *Ark. & La. Imp. Dist.,* 160 Ark. 452. When this rule is observed, it is clear that the word "retain," as used in the context, means "given." The makers of the note intended to give a lien. To give it any other meaning would render the entire instrument nugatory, so far as effectuating the purpose of the parties, as reflected by all the other language in the sentence; whereas, if the word "retain" were omitted entirely, or construed as if the word "given" were used, then the manifest purpose of the parties would be effectuated. If the word "retain" were omitted it would not destroy the sense of the instru-

ment, gathered from the language as a whole. It would be nonsensical to say that the parties intended to retain a lien on their own land to secure a debt which they owed to a third party. Construing the entire language of an instrument to ascertain what the parties meant by any particular word or words used does not contravene the rule that parol evidence is not admissible to affect a written contract in which the parties had plainly expressed their intention. This is a case where an ambiguous word in the instrument is made plain by the interpretation of that word in the light of its context and all the other language used in the instrument.

If, as learned counsel for the appellees contend, the word "retain" in the connection used is nonsensical, then it may be stricken out without impairing the sense, and, if it were stricken out, the sentence would be read as follows: "It is agreed by the makers of this note hereof that a lien is upon his entire interest in and to his father's land * * * to secure the payment of this note," etc. We therefore conclude that the word "retain" was inadvertently used, and that the parties intended to use a word which meant the same as "given," or "granted." If this was not their meaning, then the word has no meaning at all, and should be eliminated, leaving the intention of the makers clearly expressed to create a lien in favor of Pruitt on the Old Marshal Farm, situated on Spring River, in Lawrence County, Arkansas.

It occurs to us that the most serious question is as to whether the language just quoted is a sufficient description to identify the land intended to be included in the mortgage. The allegations of the complaint contain a complete description by government subdivisions of "N. R. Moore's father's land, known as the Old Marshal Farm, situated on Spring River, in the western district of Lawrence County, Arkansas." It thus appears that the particular description of the land, according to legal subdivisions, may be ascertained from the general description "Old Marshal Farm, situated on Spring River, in the western district of Lawrence County, Arkansas."

In 27 Cyc., p. 1087, it is said: "The fact that the description of property in a mortgage is expressed only in broad general terms instead of being specific will not necessarily invalidate it. Such a description may afford the means of positive identification, and that is all that is necessary." And further, "if an estate, farm, or tract of land is commonly known and called in the vicinity by a popular name, it may be described by that name in a mortgage, provided the exact extent and location of the property can be rendered certain by extrinsic evidence or by reference to the title deeds of the mortgagor or other recorded documents." We conclude therefore that the general description of the land contained in the instrument furnishes the means for its definite location and identification. This is all the law requires. It follows that the court erred in sustaining the demurrer to that portion of appellant's complaint which alleged that appellant had "an equitable lien on the land embraced and described in the action."

For the error indicated the decree is reversed, and the cause is remanded with directions to overrule the demurrer.