INTER-SOUTHERN LIFE INSURANCE COMPANY v. SHUTT.

Opinion delivered January 23, 1928.

1. VENDOR AND PURCHASER—CONSTRUCTION OF CONTRACT.—Where the purchaser of land was given the privilege under a written contract of selling any part of the east half of the tract at not less than the named price per acre, and the west half at not less than the named price per acre, such purchaser could sell any part of the east half of the tract but not any part of the west half without selling it all.

2. CONTRACTS—INTENTION OF PARTIES.—In construing contracts the most important thing is to ascertain the intention of the parties.

3. CONTRACTS—CONSTRUCTION.—Courts may acquaint themselves with persons and circumstances that are the subjects of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract so as to view the circumstances as they view them, and to judge of the meaning of the words and of the correct application of the language to the things described.

4. CONTRACTS—AMBIGUITY.—Where there is ambiguity in any part of an instrument, it is the court's duty to place itself in the situation of the parties and ascertain, if possible, from the language used, what the parties meant, and when the intention of the parties is ascertained, it controls the construction of the contract.

Appeal from Arkansas Chancery Court, Northern District; *H. R. Lucas,* Chancellor; reversed.

*John L. Ingram,* for appellant.

MEHAFFY, J.    On December 5, 1916, G. H. Getty, as receiver, sold to J. E. Shutt, under a written contract, 80 acres of land, the same being the south half of southwest quarter of section 27, township 2 south, range 5 west, for $4,800.    The contract was quite lengthy, but there is no dispute about any part of it except the following section:

"Party of the first part agrees to give to the party of the second part the option and privilege of selling any part of the east half of said tract of land at not less than $60 per acre, and said west half of said tract at not less than $80 per acre, the entire proceeds to be applied toward the purchase price as herein mentioned."

Notes were executed and delivered to the seller for $500 each, due on or before January 1, 1919, and January 1 each year thereafter until all were paid.    Said contract also provided that, if any note or interest should not be paid when due or within 30 days thereafter, all of said notes should become due and collectable at once.

Katie I. Shutt, who was the daughter of J. E. Shutt, purchased fifteen acres of said land by agreement, and the money was paid to and received by appellant.

On April 22, 1922, after the appellant had written to J. E. Shutt, calling his attention to notes that were past due, Shutt wrote to the insurance company and, among other things, said: "As to the other, wish to advise that I am about to effect the sale of five acres at $100 per acre, and for which purpose I am now asking that you execute the inclosed deed, and forward same to the Arkansas County Bank of this city, same to be held in escrow until the sum of $500 is paid to them, then to be delivered to the purchaser."

The insurance company acknowledged the receipt of this letter on April 25, and inquired of Shutt whether or not the buildings were on this five acres.    They stated: "If this is the case, we hardly believe we would be

justified in making the deed upon the payment of only $500.''

In reply to this letter, appellee wrote that there were two dwellings on the place, and that one of them was located on the five acres.

Then, on May 12, the insurance company wrote Mr. Shutt, stating: ''We are taking up your proposition with reference to deeding the five acres of land to your daughter, and will advise you in about a week what our decision will be.''

So far as the record shows, the above is all of the correspondence with reference to this matter.

Katie I. Shutt testified that she put up the $100 per acre in the First National Bank, and that the bulk of it had remained there on deposit all the time, but that there had been one withdrawal, that there was only $400 on deposit there now.

It appears that the parties never did reach an agreement as to the sale of this land, although Katie I. Shutt testifies that she bought this, but she describes the manner and identifies the letters which passed between the parties, she having written the letters for her father herself.

The chancellor entered a decree in favor of the appellant for the sale of all of the land except the five acres, and found that Katie I. Shutt was entitled to that five acres upon the payment of $400. The court held that, under the contract, the defendant had the right to sell any part of the west half of the land described in said contract.

The contract provides, or rather the parties agree to give Shutt the option and privilege to sell any part of the east half of said tract of land for not less than $60 per acre and said west half of said tract at not less than $80 per acre.

The contention of appellant is that he had the option to sell any part of the east half and had the option to sell the whole of the west half, but that he did not have the option to sell any part of the west half without selling it

all. In other words, that the option was given him to sell the west half and not a part of the west half.

The appellees contend that Shutt had a right to sell any part of the west half.

We think that the contract means what it says: that Shutt could sell any part of the east half for not less than $60 per acre, and that he could sell the west half, but that he was not given the option or privilege of selling a part of the west half. We think this construction is borne out by the conduct and acts of the parties themselves. It appears from the correspondence that the five-acre tract had one of the buildings on it, and that the appellees had contracted to sell this land at $100 per acre, and that the insurance company inquired whether the five acres did contain the buildings, were informed that it did contain one of them, and that the insurance company then wrote Shutt that they would investigate it, and there was no answer to this, so far as the record shows; the appellee did not contend that they had a right to sell, did not make any response, so far as the record shows, to the statement of the appellant that they would investigate and let him know whether they would agree to the sale of the five acres. The fact that the clause in the contract does not state that Shutt has the option to sell part of the west half, the fact that the correspondence indicates that it was not so understood, and the fact that the buildings were on the west half, convince us that the proper interpretation of the contract is that Shutt had the option to sell any portion of the east half but did not have the option to sell a portion of the west half.

In order to construe a contract, the first and most important thing is to ascertain the intention of the parties. This may be ascertained in this case by the contract itself, by the acts of the parties under the contract, and by the situation of the improvements or buildings on the property. And this court has said:

"Courts may acquaint themselves with the persons and circumstances that are the subjects of the statements

in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they view them and so as to judge of the meaning of the words and of the correct application of the language to the things described." *Wood* v. *Kelsey,* 90 Ark. 272, 119 S. W. 258; *Lowdenbeck Fertilizer Co.* v. *Tenn. Phosphate Co.,* (C. C. A.) 121 F. 298, 61 L. R. A. 402; *Hoffman* v. *Moffioli,* 104 Wis. 630, 80 N. W. 1032, 47 L. R. A. 431; *Rockfellow* v. *Merritt,* (C. C. A.) 76 Fed. 909, 35 L. R. A. 633; *Minn. Milling Co.* v. *Goodnow,* 40 Minn. 497, 42 N. W. 356, 4 L. R. A. 202.

To reach the construction of the contract which we have reached does not require the addition of any word or the changing of any word, and is, we think, in conformity with the intention of the parties as expressed by the contract.

To put the construction on the contract contended for by appellee, it would be necessary to hold that the option of selling said west one-half of said tract meant any part of said west one-half. In other words, we would have to hold that the parties intended that the words "any part" should be understood as applying to the west one-half of said tract, although these words are not used except with reference to the east one-half.

This court has said: "Where there is ambiguity in any part, word or words of an instrument, it is the court's duty to place itself in the situation of the parties and ascertain, if possible, from the language used, what the parties meant." *Wells* v. *Moore,* 163 Ark. 542, 260 S. W. 411.

"And when the intention of the parties is ascertained, this intention must control the construction." *Roach* v. *Board of Directors St. Francis Levee Dist.,* 168 Ark. 364, 269 S. W. 986.

The case will therefore be reversed, and remanded with directions to dismiss the petition of the intervener and render a decree in accordance with the complaint.