BAUER v. DOTTERER.

4-6446                                           155 S. W. 2d 54

Opinion delivered October 27, 1941.

1056

*H. K. Toney,* for appellant.

*Maurice L. Reinberger* and *E. D. Dupree, Jr.,* for appellee.

MEHAFFY, J. This suit was brought by the appellees against the appellants to cancel a certain contract entered into, and for an order to deliver immediate possession of the property described in the contract.

Appellants filed answer denying each and every allegation in appellees' complaint. Thereafter, an amended answer and motion to transfer to the circuit court was filed. In the amended answer appellants admitted that they executed the $500 note sued on, but denied that only the sum of $126.33 had been paid on said note. The amended answer alleged that they had paid to appellees the principal and interest on said note in the sum of $216.33, and at the time of payment, the note was extended for an indefinite but reasonable length of time. They state that there is now due the appellees the sum of $323.67, which sum together with cost of $8.75 has been tendered to the appellees, which tender was refused. The tender was renewed and the sum admitted to be due paid

into court. Appellants further state that if the court should find any other sum due, they hereby tender any and all sums which may be found due. Appellants then moved to transfer the cause to the Jefferson circuit court, alleging that the chancery court had no jurisdiction to try the cause.

Thereafter there was an amendment to the complaint filed in which it was stated that the appellees had learned after the institution of this suit that the contract as described in the original complaint which was written by Mr. Russell Hollis did not convey the true intent of the parties, and that a mistake was made in the writing of the same; that the contract provides that interest on the 120 notes shall be paid from maturity when, in truth and fact, the agreement was that the interest should be paid from date, and that it is so stipulated further on in said contract; that the option which was given by appellees to the appellants recites that the unpaid balance should bear interest at the rate of 6 per cent. from date, and the appellants have paid interest on all the notes to the last interest paying time, but since the institution of this suit, they have raised the contention that they do not owe interest except from maturity on said notes. The appellants did not raise this question until after this suit was filed.

Rolla E. Dotterer testified in substance that he was the owner of the land; that it contained six acres, located in Jefferson Springs; bought some of the lots more than fifteen years ago, and some of them he bought about four years ago; there is a store building and filling station with five living rooms in the rear, a two-car garage and barn, two wells, and the fences on the property. Witness testified that he agreed to sell this property to Mr. Bauer and entered into a written option with him. The written option was then introduced and reads as follows:

"Made between R. Dotterer and wife, Mrs. Emma Dotterer, parties of the first part, and C. F. Bauer and wife, Mrs. Wella B. Bauer, this 16th day of February, 1939.

"As evidence of good faith and under consideration of $1 cash in hand paid.

"Do agree to sell and deliver to C. F. Bauer and wife, Mrs. Wella B. Bauer, for the sum of $4,000, 6 acres of ground, business house and dwellings and good will on the 1st day of May, 1939.

"Terms of sale: $1,000 cash—bal. $25 monthly bearing interest of 6%, all stock to be invoiced on day deal is consummated.

"Signed this 16th day of February, 1931.

" (signed) R. Dotterer      (signed) C. F. Bauer

" (signed) Emma Dotterer  (signed) Wella B. Bauer."

Dotterer further testified that after this option was executed, the parties entered into a contract for the sale of these lots: Mr. Hollis wrote the contract. The contract was then introduced in evidence, and reads as follows:

"This agreement, made and entered into this 23rd day of June, 1939, by and between Rolla E. and Emma Dotterer, wife, of the first part, and Mrs. Chas. F. Bauer, of the second part.

"Witnesseth: That said first party does this day lease unto the said second party the following described parcel or lot of land situated in Jefferson county, Arkansas, to-wit: Lots nine, ten, eleven, and twelve; (9-10-11-12) in section eleven (11), township four (4), south; range eleven (11) west of the 5th P. M., for and during the term of 120 months from this date, and at and for the agreed rental price of $4,000, of which $500 is paid to the first party in cash, and the remaining $3,500 is to be paid in 120 monthly installments, as evidenced by the 120 promissory notes this day executed and delivered by party of second part to party of first part, each for the sum of $25 and due and payable in one, two, three, four, and so in regular numerical order up to and including 120 months after date respectively; each note bearing interest at the rate of six per cent. per annum from maturity until paid, and one note for $500, due and payable on or before January 1, 1940, bearing interest from date. The party of the first part is to pay 6% interest, from date, on the 120 notes semi-annually.

"In consideration of the premises, it is agreed that said second party shall promptly pay the said rental notes as they become due, and in addition thereto shall

pay off and discharge all taxes and legal assessments of every character which may become a lien on said land, and shall procure and maintain insurance on the dwellings on said premises against loss or damage by fire for $1,500 for the benefit of first party or assigns, as his interest may appear, and shall keep and preserve the premises to the end that no waste be committed therein.

"Should said second party neglect or fail to pay said rental notes when same becomes due, or within ninety days thereafter, or shall neglect or fail to comply with any of the covenants herein mentioned, then this lease, at the election of the said first party, shall immediately terminate and they or their assigns may immediately take peaceable possession of said lands, and the statutory written notice required in cases of unlawful detainer is hereby waived.

"And said first party hereby covenants with said second party that if all rental sums are promptly paid when due, or within ninety days thereafter, as also taxes and legal assessments and insurance, then first party hereby binds himself, his heirs, executors and administrator to execute and deliver to said second party a deed with full covenants of warranty, with relinquishment of dower, with abstract, conveying said land to said second party, his heirs and assigns in fee simple, but should default be made in payments as above provided, this obligation to convey shall be void.

"But all stipulations herein in regard to said contract of sale are wholly conditioned in this: That the full and complete payment of the above mentioned rental notes, taxes and legal assessments and insurance premiums, shall be conditions precedent to the execution and delivery of said warranty deed.

"And nothing herein shall be construed to change the relation of landlord and tenant existing between said parties until all said agreements are fully kept and performed.

"It is further agreed, that all improvements placed upon said land shall be at the expense of the second party, and that no liens shall be fixed thereon without the consent of the first party given in writing, and all im-

provements placed upon said land shall immediately become a part of the realty and shall not be removed by the second party unless he shall become the owner.

"This is to certify that I, party of the second part, have read (or have had read to me) this contract in full, and that I thoroughly understand and do accept all the terms and conditions of same, and that it contains and sets forth fully all the agreements by and between the parties hereto.

"In witness whereof, said parties have this 23rd day of June, 1939, in duplicate signed this instrument.
"Witness:                    (signed) Mrs. Chas. F. Bauer
"(signed) Russell Hollis, Jr.     "     Chas. F. Bauer
"     "     Joe A. Norton."

Rufus A. Martin testified that he was a teller in the Simmons National Bank; that Mr. Bauer and Mr. Dotterer came to the bank and Bauer said that he had $235 and wanted to pay up his interest and apply balance on principal indebtedness he owed Mr. Dotterer; that he wanted to pay interest on $3,000 and witness figured the interest on that sum for six months at 6 per cent.; figured the interest on $500 until February 2, and applied the balance, $126, on the $500 note.

Mr. Bauer testified that he was ill when he bought the property and signed the option; that Dotterer could not deliver the property at the time because he had it in the hands of Little Rock real estate men; had a misunderstanding about fixtures and stock; he thought these would go with the place, and appellee claimed they did not, and he had to pay something for them; but for that he could have paid the $1,000 cash. Witness testified that they then made an entirely different trade and that Dotterer fixed up the contract; he read the notes and signed them; he did not pay close attention to the contract; noticed the word "maturity" in it and the rest was printed form; did not notice any interlineation where interest was to be paid 6 per cent. semi-annually; saw that the interest was to be paid from maturity; that was in capital letters; did not figure he owed anything on the $3,000 at the time; did not understand that Martin was figuring interest on $3,000; did not know he was charging

interest on $3,000; did not read that parties of first part were to pay 6 per cent. interest from date; got a receipt for the money paid at the bank, but the same has been lost.

Mrs. Bauer testified in substance the same as Mr. Bauer as to the date when interest was due.

Russell Hollis testified that he drew the contract and notes; that Dotterer employed him to draw them; notes were drawn as directed, except for a typographical error; the $500 was to draw interest from date, and the small notes from maturity; it was a typographical error in stating the small notes were to draw interest from date, payable semi-annually. Witness was employed and paid for writing the contract; where the contract states that Bauer was party of the first part, it should have stated he was a party of the second part.

Rolla E. Dotterer was recalled and testified that Bauer wanted a receipt; that Mr. Martin wrote it out and he signed it; Bauer did not make any complaint when Martin told him about the interest; witness gave Bauer a receipt for $90 which was interest on $3,000 from June 23rd to December 23, 1939; did not tell Hollis that the interest was due from maturity; the option was written by Mr. Bauer and there was no question about it; there was nothing new about the contract; the trouble was raising the money.

The chancellor entered a decree in favor of appellees, and this appeal is prosecuted to reverse that decree.

The appellants say, in their brief: ''The sole question to be determined in this case is: Did the court err in reforming the contract and notes in controversy to make them read that interest on the $25 notes should run from date?''

In other words, the sole question in this case is whether the notes for $3,000 were to bear interest from date or from maturity.

The option was written by Mr. Bauer on February 16, 1939, and the contract was written on June 23, 1939. After Mr. Bauer found that he could not pay the $1,000 cash, it was then agreed that he should pay $500 cash and give his note for $500 and the 120 notes for $25 each.

The appellee, Dotterer, testified that the only change was to permit Bauer to pay $500 cash instead of $1,000; that there was no other change from the original option.

Appellants have cited a number of authorities, but there is not one of them where the facts are similar to the facts in the instant case.

It seems perfectly clear from the record that the 120 notes should bear interest from date, and that Mr. Bauer understood this; he not only understood it, but at the end of six months he actually paid the interest on the $3,000 from date and was given a receipt for $90. There is no dispute in the evidence about these facts.

Mr. Hollis, who was employed to draw the notes and contract, is not a lawyer. The contract was written on a printed form and the word "maturity" was in capital letters. Mr. Hollis evidently wrote, on the typewriter in the contract: "The party of the first part is to pay 6% interest from date on the 120 notes semi-annually." The only explanation he gave for this was that it was a typographical error. It was evidently written in at the suggestion of Mr. Dotterer, or else Mr. Hollis knew what the contract was and wrote in it. Mr. Bauer certified that he had read the contract in full and that he thoroughly understood it and accepted all the terms and conditions of the same, and it contained, set forth fully, the agreements by and between the parties thereto.

It seems to us that it was the intention of the parties, as shown by the evidence, that the interest on the 120 notes was to be paid from date.

Where there is ambiguity, in any part, word, or words of an instrument, it is the court's duty to place itself in the situation of the parties and ascertain, if possible from the language used, what the parties meant. *Wells* v. *Moore,* 163 Ark. 542, 260 S. W. 411; *Inter-Southern Life Ins. Co.* v. *Shutt,* 175 Ark. 1161, 1 S. W. 2d 801.

In the last cited case the court also said: "In order to construe a contract, the first and most important thing is to ascertain the intention of the parties. This may be ascertained in this case by the contract itself, by the acts of the parties under the contract, and by the situation of the improvements or buildings on the prop-

erty. And this court has said: " 'Courts may acquaint themselves with the persons and circumstances that are the subjects of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they view them and so as to judge of the words and of the correct application of the language to the things described'."

In this case the appellants knew long before suit was brought, not only that appellees were claiming interest from date, but that interest had been calculated by the bank teller on the 120 notes for six months in compliance with the contract. The teller explained this to Mr. Bauer, who asked for a receipt. Appellees gave him a receipt for $90 which was 6 per cent. interest on the 120 notes for six months. The contract expressly provided that this interest on the 120 notes was to be paid semi-annually.

Bauer, beyond dispute, acquiesced in the payment of the interest on these notes from date for six months as provided in the contract; took a receipt, and was bound to know all about it.

"The term 'acquiescence' is sometimes used improperly. It differs from confirmation on the one side, and from mere delay on the other. While confirmation implies a deliberate act, intended to renew and ratify a transaction known to be voidable, acquiescence is some act, not deliberately intended to ratify a former transaction as existing, and intended, in some extent at least, to carry it into effect, and to obtain or claim the benefits resulting from it. The theory of the doctrine is, that a party, having thus recognized a contract as existing, and having done something to carry it into effect and to obtain or claim its benefits, although perhaps only to a partial extent, and having thus taken his chances, cannot afterwards be suffered to repudiate the transaction and allege its voidable nature." 2 Pomeroy's Equity Jurisprudence, (4 ed.) § 964.

The decree of the chancery court is affirmed.