## HUGHES *v.* EL DORADO UNION OIL COMPANY.

### Opinion delivered October 8, 1923.

1. CONTRACTS—CONSTRUCTION AS A WHOLE.—In determining the intention of the parties a contract must be construed as a whole, nothing being treated as surplusage if any meaning, reasonable and consistent with the rest, can be given it.

2. MINES AND MINERALS—CONSTRUCTION OF OIL AND GAS LEASE.— An oil and gas lease stipulated that it should remain in force five years; that the consideration of the lease was not the down payment, but the contract to drill a well upon certain property within 12 months; that if the lessee, by reason of the depression of oil or other unforeseen hindrances, is unable to drill within 12 months, the lessee was not to transfer the leases except to raise money or equipage with which to develop the leases; that drilling operations should be continuous, and that, should the well be abandoned before a test for oil had been made, and no new well commenced within a reasonable time thereafter, the lease shall revert to the lessor. *Held* that the intention of the parties was that the lessee should drill a test well within 12 months, unless prevented by depression of oil or other unforeseen hinderances, in which event it might assign any of the leases within a reasonable time after expiration of the 12 months' period to raise money or equipage to drill a test well, provided the operations should be continuous.

3. CANCELLATION OF INSTRUMENTS—SUFFICIENCY OF COMPLAINT.—A complaint which asked that an oil and gas lease be canceled on the grounds (1) that it was procured through fraud, and (2) that there was a forfeiture on account of the failure of the lessee to drill a test well within 12 months, *held* not demurrable.

4. PLEADING—NEGATIVE AVERMENT.—Where an oil and gas lease stipulated that a well should be drilled within 12 months, and that if the lessee, by reason of the depression of oil or other unforeseen hindrances, was unable to drill within 12 months, he was not to transfer the leases except to raise money or equipages (equipment) with which to develop the leases, *held* that a complaint seeking to enforce a forfeiture for failure to drill within 12 months need not allege that there was no depression of oil or other hindrance which prevented the lessee from drilling.

Appeal from Ouachita Chancery Court; *J. Y. Stevens,* Chancellor; reversed.

*Houston Emery, Smead & Meek, Gaughan & Sifford* and *Elbert Godwin,* for appellants; *H. C. Compton,* of counsel.

1. The consideration having failed, the leases are forfeited. The demurrer admits that the drilling of a well was not commenced within twelve months after the date of the leases. A contract must be considered as a whole, in construing it, and all its parts must be considered to determine the meaning of any particular part. 94 Ark. 461; 104 Ark. 475; 93 Ark. 497; 60 Ark. 595; 52 Ark. 30; 96 Ark. 320. Leases prepared by the lessee will be construed most strictly against the lessee, and favorable to the lessor. 99 Fed. 606, 48 L. R. A. 320. Since the sole consideration for the execution of the leases was the drilling of a well, the nonperformance of that act destroys the consideration and forfeits leases. 171 U. S. 312; 45 W. Va. 143, 30 S. E. 95; 133 U. S. 156; 2 Dru. & W. 274; 1 Gray 414; 26 Ark. 617; 72 Ark. 310; 86 Ark. 251; 103 Ark. 464.

2. It is admitted by the demurrer that appellee failed and refused to drill the well within the twelve months specified in the leases, and for a period of six months after that, when suits were brought; this constituted an abandonment of the appellee's rights or claims under the leases. 45 W. Va. 27, 44 L. R. A. 107; 1 C. J. 10, § 14; 1 R. C. L. 4, § 4; 148 Ark. 301.

3. The demurrer also admits the truth of the allegations of the complaint to the effect that the leases were obtained by misrepresentation and fraud, but appellee contends that the legal effect of the construction of the leases is a question of law, and that a mistake of law will not avoid the contracts. This case falls within the exception that is as well recognized as the rule, viz: that where the mistake as to the legal construction of a contract on the part of one of the contracting parties was occasioned by the false and fraudulent representations of the other, equity will relieve against it. 6 R. C. L. 625, § 44; 13 Ark. 129; 49 Ark. 24; 69 Ark. 406.

4. The leases should be held void because unilateral, if they are not forfeited by reason of the failure to drill

the well within twelve months.    6 R. C. L. 686-687;
4 Ark. 251; 96 Ark. 184.

*Harve L. Melton* and *J. W. Warren,* for appellees.

1.  We agree that a contract must be construed as
a whole, and that every part must be considered to
determine the meaning of any particular part as
well as of the whole; but to adopt appellant's construc-
tion would do violence to this principle, because it would
eliminate clause nine of the leases entirely.  In addition
to authorities cited by appellants, see 224 Fed. 74;
187 Pac. 235; 6 R. C. L. 847; 96 Ark. 320; 186 S. W.
622; 99 Ark. 112; 104 Ark. 573; 149 S. W. 518.  Para-
graph nine so modifies the effect of paragraph eight as
to make time not of the essence of the contract.  Page
on Contracts, § 1154.  There was no allegation that the
delay was unreasonable, nor any showing of injury
resulting therefrom.  87 Pac. 724; 74 Kan. 581.  *Hug-
gins* v. *Daley,* 99 Fed. 606, 48 L. R. A. 320, relied on
by appellants, is not controlling in this case.  145
Ark. 566; 225 S. W. 345; 10 R. C. L. 331; 196 Pac. 688;
145 Ark. 310; 225 S. W. 340; 237 U. S. 101; 245 S. W.
802.

2.  Mere lapse of time without acts showing an
intention to abandon does not constitute abandonment.
70 Ark. 525; 69 S. W. 572; Lindsey on Mines, §§ 643,
644; 86 Fed. 90, 95; 1 Thornton, Oil and Gas, 249.

3.  On the question of fraud, appellants failed
entirely to bring themselves within any of the exceptions
quoted in their brief from 6 R. C. L. p. 265, and the
contention as to misrepresentation is wholly without
merit.  Pomeroy, Equity Jurisprudence, 3rd ed. 891.

HUMPHREYS, J.  Appellants instituted suit, on the
24th day of November, 1922, in Ouachita Chancery Court
to cancel several oil and gas leases executed on the 7th
day of April, 1921, by Mrs. Janet Hughes and others in
their own right, and by Mrs. Janet Hughes in her repre-
sentative capacity, to J. L. Hines, for appellee, El
Dorado Union Oil Company.  Two grounds are alleged

in the substituted, amended complaint in support of the prayer for a cancellation of the leases. The first ground is, that the execution of the leases was procured through fraud by misrepresentations to the effect that, unless J. L. Hines or appellee should drill a test well upon certain lands in said county within twelve months of the date of the leases, same would be forfeited and of no effect. The second ground is that there was a forfeiture of the leases on account of the failure of appellee, to whom the leases were immediately assigned, to drill a test well upon said lands within the twelve-month period provided in section 8 of each lease. Copies of the leases, which are in substance alike, were filed as exhibits to and as parts of the bill asking cancellation thereof.

Appellee filed a demurrer to the substituted, amended bill when perfected, upon the ground that it failed to state facts sufficient to constitute a cause of action when read in connection with the exhibits attached and made a part thereof.

Upon hearing, the court sustained the demurrer to the bill. Appellants stood upon the bill and refused to plead further, whereupon the court dismissed the bill for want of equity. From the decree of dismissal an appeal has been duly prosecuted to this court.

This litigation grew out of the construction the respective parties placed upon the language of the leases. Appellants construed the language of the leases to mean that appellee should drill a test well, in any event, upon the designated lands, within twelve months from the date of the leases, in order to prevent a forfeiture thereof, and if the leases did not have that meaning they were obtained through misrepresentations to that effect, and should be canceled, in either event, on account of a failure of consideration. Appellee construed the language of the contract to mean that it had a reasonable time after the expiration of the year limit provided for in section 8 of the leases to drill a test well upon the designated

lands by reason of the depression of oil, as provided for in section 9 of the contract.

The leases are quite lengthy, so, for the sake of brevity, only those parts of the contract necessary to a determination of the differences in construction between the parties will be set out. They are as follows:

"For and in consideration of stock and one dollar, cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed, has granted, demised, leased and let, and by these presents does grant, demise, lease and let * * *"

"It is agreed that this lease shall remain in force for a term of five years and as long thereafter as oil and gas, or either of them, is produced from said land by the lessee."

"8. It is agreed and understood by the parties to this contract that this oil and gas lease is let for the sole and only purpose of developing for oil and gas, and that the consideration to the lessor for same is not the DOWN PAYMENT, but the contract to drill a well upon certain property hereinafter specified, and the lessee binds himself to cause such well to be drilled within twelve months from this date.

"9. And in the event that the lessee or lessees shall have not been able, by reason of the depression of oil, or other unforeseen hindrances, to drill on one of the tracts in the leases below mentioned within the twelve months set out in this contract then it is agreed and understood by the parties that the South Arkansas Oil Company is not to transfer any of the leases taken under this contract, unless it can be specifically shown that they are making such transfer for the purpose of raising money or equipage with which to develop the leases so taken.

"It is further understood by the parties to this contract that drilling operations of the well above referred to shall be continuous, and that, should the well be abandoned before a test for oil has been made, and no

new well commenced within a reasonable time thereafter, this lease shall revert back to the lessor."

The argument is made by appellant that all other considerations mentioned in the leases yield to the consideration mentioned in section 8, and that the performance thereof is a condition precedent, the nonperformance of which worked a forfeiture of the contract. The contract does not contain a forfeiture clause, and the time fixed in which to drill a test well, in section 8, was not made the essence of the contract. The construction placed upon section 8 by appellants would give no force and effect whatever to section 9 of the leases. In ascertaining the intent of parties to a contract, which is the real purpose of construction, one of the well-recognized canons of construction is that "a contract must be construed as a whole and all of its parts must be construed to determine the meaning of any particular part as well as of the whole." *Earl* v. *Harris,* 99 Ark. 112; *Yellow Jacket Mining Co.* v. *Tegarden,* 104 Ark. 573; *Arlington Hotel Co.* v. *Rector,* 124 Ark. 90. In the case last cited this court took occasion to say: "In determining the intention of the parties, a contract is to be construed as a whole, nothing being treated as surplusage if any meaning, reasonable and consistent with the rest, can be given it." By applying this canon of construction to the leases in question, some meaning may be attached to each clause and paragraph and all be permitted to stand as a harmonious whole. The clauses and paragraphs are not so conflicting with each other that it is necessary to strike any of them out of the contract in order to ascertain the true intent of the parties. The intent, in substance, of the parties, as gleaned from all the words, clauses, and paragraphs in the leases, is that the lessee should drill a test well on some of the lands mentioned, within twelve months, unless prevented by the depression of oil or other unforeseen hindrances, in which event it might assign any of its leases, within a reasonable time after the expiration of the twelve-month period, to raise money or equipage to drill a

test well on the lands leased from appellants within a reasonable time after the expiration of the year, provided the operations in drilling a test well, after the year limit, should be continuous. In other words, section 8 was intended to emphasize the fact that the most important consideration was to be the drilling of a test well within twelve months. This construction must be given section 8, else it would be in direct conflict with section 1, which recites other considerations than the consideration mentioned in section 8. Again, section 8 must be read in connection with section 9, because reference is made to section 8 in section 9. The only way to give any effect to section 9, when read in connection with section 8, is to say it modifies or qualifies the consideration specified in section 8, to the extent of allowing any of the leases to be assigned, within a reasonable time, to raise money to drill the contemplated test well within a reasonable time after the expiration of the year period. Having thus reconciled the three sections referred to, it is quite apparent that the last section, referring to continuous operation, has relation to the drilling of a test well after the expiration of the twelve-month period. There is no conflict between the construction given these sections and the construction placed upon the time limit section in the oil lease in the case of *Grooms v. Minton,* 158 Ark. 454, because the provisions of the contract in that case gave five years, without modification or qualification, within which to commence operations. Where a time certain is specified in which to begin operations, a forfeiture could not occur on account of the inactivity of the lessee within that time.

In the leases before us for construction, while it may be said that the paragraphs referred to are interlocking, section 9 is in the nature of an exception to the consideration specified in section 8, and was thrown in for the benefit of the lessee. For this reason it was not necessary to the sufficiency of appellant's bill to allege the exception. Depression of oil or other unforeseen hindrances, if any, which prevented the drilling of a test well

in the twelve-month period, were matters peculiarly within the knowledge of appellee, and not necessarily within the knowledge of appellants. Certainly appellants should not have been required to plead a negative under such circumstances. Appellants stated a good cause of action under the leases when they alleged a failure on the part of appellee to drill a test well on the lands mentioned, within the twelve-month period. Appellants also stated a good cause of action in alleging that the contract was procured through fraud by misrepresentations of the fact that the contract did not allow any time beyond the twelve-month period for drilling a test well on the lands mentioned. The demurrer therefore should have been overruled. If appellee came within the exception, inserted for his benefit, allowing him to drill a test well after the twelve-month period on account of depression of oil or unforeseen hindrances, he should have pleaded his excuses by answer, it being defensive matter. The plea to the allegation of fraud should also have been made by answer, and not demurrer.

On account of the errors indicated, the decree dismissing the bill for want of equity is reversed, and the cause remanded with direction to overrule the demurrer.