MISSOURI & NORTH ARKANSAS RAILROAD COMPANY v.
FOWLER.

Opinion delivered April 18, 1927.

1. PHYSICIANS AND SURGEONS—"MEDICAL ATTENTION" DEFINED.—A contract by which a doctor, in consideration of a railroad pass over lines within the State, agreed "to' render free medical attention to patrons and employees" when injury has been sustained by reason of the company's negligence, *held* not to require surgical attention to an injured employee without compensation.

2. PHYSICIANS AND SURGEONS—"FREE MEDICAL ATTENTION" CONSTRUED.—A contract between a railroad and a doctor by which the doctor agreed to render "free medical attention" to patrons and employees of the railroad, being written by the latter, must be strictly construed against it.

3. CONTRACTS—INTENTION OF PARTIES.—In determining the meaning of a contract, courts try to determine the intention of the parties as ascertained from the words employed, the connection in which they are used, and the subject-matter.

4. PHYSICIANS AND SURGEONS—CONTRACT TO GIVE MEDICAL ATTENTION.—A doctor's contract to render medical attention to employees of a railroad in cases where the company is liable for an injury did not require such attention to an employee who executed a general release to the company, which denied any liability.

Appeal from Boone Chancery Court; *Sam Williams,* Chancellor; affirmed.

*Shouse & Rowland,* for appellant.

*George J. Crump,* for appellee.

McHANEY, J.    This suit was begun in the Boone Circuit Court by the First National Bank of Harrison against appellees, Dr. J. H. Fowler and J. B. Price, to recover on a past due promissory note for $305, dated November 2, 1923, with interest from date at 10 per cent., executed by Price to Dr. Fowler for medical and surgical treatment, which note had been assigned to the bank by Dr. Fowler. Price filed an answer, admitting the indebtedness, and a cross-complaint against appellant railway company, who appeared and moved to dismiss for misjoinder. Its motion being overruled, appellant asked that the cause be transferred to equity, which was done by consent of all parties. Appellant then filed an answer to the cross-complaint of Price, and made its answer a

cross-complaint against Dr. Fowler. The facts are substantially as follows:

Dr. J. H. Fowler is a reputable physician and surgeon residing in Harrison. He had been a local surgeon for appellant in 1922, and, on February 2, 1923, he was again thus honored, appellant's vice president and general manager writing him the following letter:

"AGREEMENT.

"Dear sir: I am handing you herewith annual pass No. T295, good over this railroad between stations in Arkansas, limited to December 31, 1923, which has been issued in your favor account local surgeon, with the understanding that, in accepting same, you agree, during the period it remains in effect, to render free medical attention to all patrons and employees of this company when called upon. Such medical attention to be rendered to patrons and employees when injury has been sustained by them on account of negligence of this company or its employees and when this company is legally liable for such injury. It being distinctly understood, however, that nothing in this agreement·nor the acceptance by you of pass referred to authorizes you to act as an official or representative of this company in any matters, medical or otherwise.

"This agreement is written in duplicate, and the return to me of the attached copy, properly signed and dated, will be sufficient record of agreement and cancel all previous agreements between the parties hereto covering medical attention.

"This agreement and the transportation herein mentioned shall remain in effect until December 31, 1923, unless previously canceled by either party giving to the other thirty days advance notice.

EXHIBIT A.

"J. C. Murray,

"Vice Pres. & Gen'l. Manager.

"I acknowledge receipt of transportation referred to and accept the above named conditions.

(Sig.) "J. H. Fowler,

"Harrison, Ark."

In August, 1923, appellee, Price, while working in the shops of appellant, received a severe, painful and dangerous injury to a very delicate and private part of his person, under such circumstances, as he claimed, and the railway company denied, liability therefor. He was taken to the office of Dr. Fowler, where he received treatment in the nature of first aid, and was then removed to his home, where, at his and the railway company's joint request, he was treated for several months, two skillful and successful surgical operations being performed by Dr. Fowler during such time. On October 18 Price made a settlement with appellant for $236, and executed a written release therefor, at the conclusion of which the following paragraph appears: "I accept the above amount in full settlement, less fifty dollars advanced me September 5, 1923, or a total of $186, with understanding railway company pays medical and doctor bills due for injury."

On the same date Dr. Fowler, at the suggestion of Mr. Flinn, claim agent for appellant, rendered a statement of his account in the sum of $362.50 for professional services to Mr. Price, payment of which was, on October 26, refused, for the reason that, under its construction of the pass contract, such services were to be given free. Dr. Fowler then demanded payment of Price, and accepted the note sued on from Price, which he later transferred to the First National Bank.

Only two witnesses testified, Dr. Fowler for Price on his cross-complaint against appellant, Mr. Flinn for appellant. The contract hereinbefore set out between Dr. Fowler and appellant was offered in evidence, as was also the release agreement executed by Price.

At the conclusion of the testimony the chancellor entered a decree in favor of the First National Bank against Fowler and Price for the amount of the note, with accrued interest, in the sum of $372.60, and in favor of Price on his cross-complaint against the railway company in the sum of $372.60, and dismissed the cross-com-

plaint of appellant against Dr. Fowler, from which the railway company has appealed.

The principal question for consideration here, as well as in the court below, is the proper construction to be placed upon the written contract between Dr. Fowler and appellant. Dr. Fowler's construction of the contract was that, under it, he was to do office work in minor injuries, and give first aid treatment to persons suffering injury at appellant's shops, who would call at his office for treatment, but that, if he went out to homes, he would be entitled to make a charge therefor. Appellant, on the contrary, insists that the contract was clear and unambiguous, and, in accepting said pass, he agreed "to render free medical attention to all patrons and employees of this company when called upon. Such medical attention to be rendered to patrons and employees when injury has been sustained by them on account of negligence of this company or its employees, and when this company is legally liable for such injury. It being distinctly understood, however, that nothing in this agreement nor the acceptance by you of pass referred to authorizes you to act as an official or representative of this company in any matters, medical or otherwise." Appellant insists that this clause of the contract makes it obligatory on Dr. Fowler to render, not only medical attention, but surgical attention to such employees and patrons of the company as it may call upon him to render. We do not agree with appellant in this contention. In the first place, this is a contract written by appellant, and must be strictly construed against it. Nowhere in the contract is it provided that Dr. Fowler shall render any surgical attention to any employee or patron. Furthermore, we do not think it was in the contemplation of the parties, when the contract was written by appellant and accepted by Dr. Fowler, that he should be called upon to render any extensive medical attention to appellant's employees and patrons, but only such as might require first aid treatment, or for temporary or minor complaints and injuries. If appellant's contention is right, a situation might very

easily be seen where the entire time, or a large portion thereof, of the doctor might be taken up in treating patrons and employees of appellant who received injury due to its negligence. But such was not the intention of the parties, as evidenced by this contract. It was not intended that any great amount of the doctor's time should be demanded by appellant, and this construction is borne out by the small consideration for the contract, a pass over appellant's line in Arkansas.

In determining the meaning of the contract the courts try to determine the intention of the parties and give effect to that intention. We find the law on this subject well expressed in 6 R. C. L., 225: "Generally speaking, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. It has been said that to this paramount rule all others are subordinate. The parties should be bound for what they intended to be bound for, and no more. The courts will hold them bound to that extent, if their intention can be arrived at. To hold any one bound further would be to impose on him an obligation which he never assented to, or intended to take upon himself, and would be the height of injustice and oppression."

Again, the same authority, in § 226, uses this language: "The intention of the parties is to be ascertained from the words employed, the connection in which they are used, and the subject-matter in reference to which the parties are contracting."

Other cardinal rules for the construction of contracts are laid down by the same authority in subsequent sections.

Many authorities might be cited from our own court to sustain this legal principle. This conclusion is further borne out by the language of the last sentence of the contract above quoted, stipulating that the doctor could not act as an official or representative of the company in any matter, medical or otherwise, conclusively

showing that he was not occupying the position of a general physician or surgeon for the company. Then the clause in the contract providing that he should render medical services free of charge only in cases where the company is legally liable for such injury strengthens the contention of appellee, for, in the instrument executed by Price, called a "general release," it denied any liability, and the payment of only $236 somewhat strengthened the idea of non-liability, inasmuch as it was agreed that Price received a very painful, severe and dangerous injury from which he suffered several months. Since the medical attention was not required by the contract to be rendered except in cases where the company was legally liable, it follows that, if the company should require the services of a doctor in non-liability cases, he would be entitled to compensation for such services.

Our conclusion is that the decree of the chancery court is right, and it is therefore affirmed.