S. Gumpert Company, Inc., *v.* Hernreich.

4-5663 134 S. W. 2d 568

Opinion delivered December 4, 1939.

*I. J. Friedman* and *George W. Dodd*, for appellant.
*Franklin Wilder* and *Vincent J. Narisi*, for appellee.

Baker, J. In this opinion the appellant will be referred to as such or as Gumpert, and Hernreich will be referred to by name or as the appellee. Gumpert sued Hernreich to recover $728.04 alleged to be due on open account, also for a balance of $86.06 together with interest, making a total of $89.07, for additional items alleged to be due for commissions advanced, and also to recover from the appellee $65.88 collected by him for the account of Dinty Moore's Quality Foods, Fort Smith, and $12.73

in like manner from Public Service Cafe, Tulsa, Oklahoma.

Attached to this complaint was a copy of the contract of employment, some of the provisions are set forth without attempting to copy this rather lengthy instrument. Hernreich was to be paid 25 per cent. of the net amount of all orders which he might sell at list price and which were accepted by the company, except upon certain articles smaller commissions were agreed upon. This salesman was allowed a drawing account of $125 a month to be paid in equal amounts on the 15th and the last day of the month. Hernreich had the right to accept or collect money from customers, for his principal, but this money was to be remitted the same day it was collected, the cash by money order for the full amount less the cost for procuring the money order. If collections were made in checks these were to be forwarded as collected. In Hernreich's contract there was provision for a bond and insurance in the sum of $1,000, but this was not insisted upon and inasmuch as they operated under a contract without such bond or insurance, the parties are deemed to have waived that provision.

Seymour Roth, an employee of appellant, represented his company in making this contract, but he did not sign it for or on behalf of the company. It was testified to by him and also by other witnesses that Roth did not have the power or authority to act for the company in the execution or signing of such contract. After the terms had been agreed upon, the contract was sent to the home office in New York where it was duly signed.

Hernreich worked for several months and was finally discharged by a letter received by him on March 26, 1938. In this letter it was stated that his discharge was effective as of March 1st.

When Hernreich was sued, he pleaded several defenses: one was that, in January of 1938, he met Mr. Roth in Chicago and made a new contract with him whereby he was to be paid $50 a week which was to include both his drawing account and expense account, and he finally pleaded and testified that this sum of

money was to be the consideration for a new contract in place or instead of the commission contract which had been in existence up to that time; and he said it was the agreement that the old debts or obligations would be canceled or "wiped out," and further that he was entitled to the sum of $50 a week for the four (4) weeks in March before he received the notice of his final discharge. This theory of the case was submitted to the jury and there was a verdict for Hernreich for the $200, less a credit of the amount of collections that he had made during the month of January and which had not been reported to the company as stated in the verdict. From this verdict and the consequent judgment, Gumpert has appealed. There are one or two other matters that deserve a place in the statement of this case, but these can perhaps be better presented in the discussion that we shall have to make in regard to the authority, or the apparent scope thereof, of Roth as an employer of the appellee for his company as well as the same power or authority of Hernreich as a representative of his company in some matters.

Hernreich says in regard to the authority of Roth that Roth may have been the owner, the president, the vice-president, or secretary of the Gumpert Company; that he knows nothing about it except the fact that his only dealings were with Roth representing Gumpert. This statement so made by Hernreich perhaps ought to be accepted with a certain degree of reservation since the written contract executed between the parties and introduced in evidence here was not signed by Roth although he represented the company in the negotiations as to the terms and conditions thereof. The proof from other witnesses is to the effect that Roth had no authority to execute contracts or to change or modify the conditions thereof after they had been executed on behalf of the corporation, but it was also equally certain that Roth had power to hire salesmen such as Hernreich and to discharge them; so the theory is that he was acting as general agent and apparently had the power as general agent, and, therefore, stood for or in the place of his company in the dealings between the appellant and the

appellee. Hernreich offers in corroboration of this theory the fact that he made a new contract in January with Mr. Roth, the one that he sues on wherein he claims he should have been paid $50 a week for all expenses and services. It is forcefully argued that in corroboration of this statement money was so advanced to him from and after that day, at least until the 1st of March. There is a denial that such change or modification was made in the contract and that Mr. Roth agreed to cancel or charge off the indebtedness that the appellee owed up to that time. It was also urged that Mr. Roth had no power or authority to charge-off debts that might be due or owing to the corporation, but it is undisputed that there was a change or modification of the contract in that there should be a remittance of $50 per week which the appellant insists was the only modification asked for and suggested by Hernreich in writing which was sent to the home office and accepted by the corporation by acquiescing to Hernreich's proposal and by forwarding to him thereafter the $50 per week upon the terms, conditions and agreements made and offered by him at that time.

Hernreich was working largely in Arkansas and Oklahoma. The company's home office was in the state of New York. Obviously, all transactions and negotiations in regard to these disputed matters were in writing.

We think it becomes necessary, therefore, to determine at least the salient facts and agreements from these writings. In the presentation of these letters exchanged between the parties, we have made some effort to try to arrange them not in the order in which they appear in the abstract and brief, but in the sequence in which they were written and received in so far as they relate to the disputed matters under investigation. A letter written by Mr. Hernreich from the Enloe Hotel at McAlester, Oklahoma, is not dated, but was addressed to Mr. Roth. It is as follows:

"Beginning Jan. 15th, I would like to suggest that you send me $50.00 per week, which shall include expenses and draw. Any balance, I want credited against my overdraft, in order to reduce them.

"The overdraft is working as an obsession instead of an incentive.

"Hold everything above $50.00 per week until my overdraft has been materially reduced.

"I trust that this will meet with your approval."

Another letter by Mr. Hernreich, evidently written after the above copied letter, was dated January 31st of 1938, and was from the Washington Hotel, Fayetteville, Arkansas. It is as follows:

"In re: Letter Jan. 27th. The only reason I sent my expense reports is because I thought you wanted them, although I know I am only getting a total of $50.00 per week in order to decrease my overdraft. I do not expect my expense sheets to be honored too.

"I recently received $44.00 and $23.00 for two weeks work. Is it possible to inform me how the house arrived at these figures. I certainly cannot work or travel on $23.00 per week.

"You know by now of last week. The first two days, hemmed in by floods, so I decided to see a dentist."

Other matters in this letter are not important. Perhaps before we proceed to copy other letters evidencing the negotiations between the parties, we should discuss the effect of the two foregoing letters. In the very first sentence in the letter written from the Enloe Hotel he makes a suggestion that he be sent $50 a week "which shall include expenses and draw." There is no doubt about what he meant by this expression and the interpretation given by the company to it was not in any sense disputed by him except the explanation which he made when he testified and which also appears from another letter, and such explanation will be considered later in this discussion. The next sentence is "any balance, I want credited against my overdraft, in order to reduce them." This expression does not permit a conclusion that Hernreich did not owe at that time upon his overdraft, nor could it possibly be intended as an expression by him that the amount should be paid to him as a salary including his expenses, but the amount that should be drawn by him as a salesman was to be charged to and be

repaid out of the commissions that he might earn. The remaining portion of the letter is also contradictory of Hernreich's position at the time of the trial. He says "overdraft is working an obsession instead of an incentive. Hold everything above $50.00 per week until my overdraft has been materially reduced. I trust that this will meet with your approval." So far as this record discloses this is the first step or the beginning of negotiations to change the contract in the one particular. It had evidently not been discussed at that time between Hernreich and Roth to whom he wrote the letter. We say that for the reason that there was no indication that there had been any former discussion because he was now offering this as a substitute arrangement or provision whereby he was to be paid $50 per week in lieu of advancements upon expense account or otherwise. There is nothing to indicate that such sums should not be repaid by him. He had so obligated himself in the contract of employment and this part of the proposed change in no way lessened or decreased that obligation. Although this letter is not dated, it was undoubtedly written early in January so it would be received in time for a remittance to be made beginning January 15th. The second letter of those above copied sent from the Washington Hotel, Fayetteville, Arkansas, is in response to a letter written January 27th. He had forwarded to the company his expense reports and it seems highly probable the company had questioned the proprietary of his having sent these expense reports as he was drawing $50 per week according to the change in the contract whereby he was to receive $50 a week beginning January 15th in accordance with the first letter. He says that he sent in the expense reports because he thought they were wanted by the company and "I know that I am only getting a total of $50.00 per week in order to decrease my overdraft." We find here a new acknowledgment of the indebtedness on account of the overdraft and an acknowledgment that the $50 per week was forwarded to cover expenses or amount to be drawn by him. Such must be the interpretation by the language used by him. It is not susceptible of any other meaning. He so construed the only modification made in his contract. A

statement sued·on was under date of January 31, 1937. It was as follows: "S. Gumpert Co., Inc., Gentlemen: The statement of my account as of December 31, 1937, with the S. Gumpert Co., Inc., has been received, showing a balance of $728.04 due S. Gumpert Co., Inc. This statement is correct. (signed) G. T. Hernreich." It becomes necessary to comment upon this particular matter for but one reason, that is, Hernreich says that he signed this statement only for the reason that he was under duress or forced to do so in order that he might get a check from the company upon which to live and in order that he could go on and transact business for his employer. There is no evidence in this entire record showing that, at that time, there was any controversy between the appellant and appellee, nor is there a word of testimony that the company was not at that time regularly forwarding to him the expense accounts as they were made out by Hernreich and received by the company, nor had it failed to pay to him the $125 per month as a drawing account. Hernreich is probably correct in his surmise or suggestion that if he did not make reports, respond to requests, if he failed to show that he was working that the company would withhold checks that had been regularly forwarded up to that time, but it may be asserted without any reasonable contradiction that in everything that Hernreich has said taken together with its most forceful implications, there was no duress. The company had the right to demand of him the regular reports, the acknowledgment of indebtedness that he owed, and if he did owe the indebtedness there is no reason why he should not have so stated. In conclusion on this point it may be stated further that we presume this is the debt that he now insists was canceled or wiped out by Mr. Roth. He acknowledged no other until some weeks later. His statement in regard to such cancellation of the indebtedness may not be seriously considered here for several reasons, one is that no consideration is shown for it, but if we should concede that the parties might mutually agree to the forgiveness and cancellation of the debt, it was certainly not done when the contract was changed so that Hernreich should receive $50 per week. The evidence to that effect is contradictory of the

very terms of the agreement which he said was made and which he himself wrote, evidenced by the letters. There is no better settled principle of law than the one so often stated that written contracts and agreements may not be contradicted, changed or modified by parol evidence. 12 Am. Jur. 1004, § 427. Although the contract may, by agreement, be changed or modified, yet when that is done it may not then be contradicted. 12 Am. Jur. 1006, § 428. See *Engleman, Inc.,* v. *Briscoe,* 172 Ark. 1088, 291 S. W. 795; *Dewey Portland Cement Co.* v. *Benton County Lbr. Co.,* 187 Ark. 917, 63 S. W. 2d 649.

The trial court erred in permitting such evidence to be so offered under the circumstances as they appear from this record.

That conclusion must also be reached from another viewpoint presented by appellant. Whatever may be said about the general power or authority of Roth to make contracts, the evidence offered by the appellant is to the effect that he did not have power to change or modify contracts, or to cancel indebtedness due or owing to the company. While this evidence is from officers and employees of the appellant company, they are not parties to the contract, agreement or litigation, and their statements are not disputed by any witnesses or by any circumstances or conditions that otherwise appear. It may reasonably be argued that Mr. Roth agreed to the change whereby the $50 per week was to be advanced for expenses and drawing account, as the letter making such a request was addressed to him. The evidence that the company acceded to this request made by Hernreich is to the effect that the company, not Roth, forwarded the money in accordance with Hernreich's request. As to the other items introduced into this suit these were collections in most instances made by Hernreich which he admitted having made and did not forward to the company. The explanations of these matters and the reason assigned for not having forwarded these collections was that he was not paid $50 a week for four (4) weeks in March and that he did not receive notice of his discharge until he received the letter on the 26th day of March. We accept his own explanation for his conduct: "I do all the work I am physically able to do. The least

you could have done was to have let me finish out the season, April, May, and June. I could have reduced my overdraft considerably in these months." This was a letter written from Tulsa, Oklahoma, on the day he says he received the letter telling him he was discharged.

Hernreich offers one other defense and that is to the effect that the appellant was a foreign corporation not authorized to do business in Arkansas and that it was in effect doing business in the state and for that reason could not maintain a suit against him arising out of his employment which was in part the doing of such business in Arkansas in violation of the Arkansas statute relative thereto. Pope's Digest, § 2251.

We have examined the contract which Hernreich entered into with this foreign corporation. There is no provision thereof under or by which Hernreich might be required to engage in any intrastate business in the state of Arkansas on behalf of the company. He says that he maintained an office in his home for the company where he accepted mail or 'phone orders and where his wife, for him, accepted 'phone orders when he was not in. The evidence in this regard is very indefinite and very uncertain. It is of such a nature that it appears that such matters as before mentioned were mere incidents that may have arisen in the course of interstate commerce. Besides these facts the appellee could not go out and engage in business unauthorized or without authority expressed or implied from his principal and in that way subject his principal to the penalties of the law and thereby enable him to defeat his acknowledged obligation and indebtedness. Our conclusion is that the appellee was not doing intrastate business for the company in the state of Arkansas. In order to bind the company and subject it to the penalties of the law he must have been authorized, or the business must have been of such a nature that the company would have had knowledge of it and approved his conduct by the acceptance of benefits; or, knowing what he was doing, failed to object or make an effort to restrain him therefrom. No such a condition prevails. His conduct in that respect must be regarded under the same limitations that we have stated above in regard to

Roth as another agent for the same company. He would be estopped to take advantage of his own misconduct to penalize appellant, and thereby profit by reason thereof. 17 Fletcher Cyc. of Corp., Chapter 67, p. 661, § 8532.

The conclusions are irresistible, therefore, that he is indebted for the full amount for which he was sued. There has been no legal evidence showing a release or discharge thereof. All of the evidence that tends to do so is offered in contradiction of the terms of the agreements, contracts between the parties as confessed and stated and agreed to by the appellee himself.

The appellee argues most forcefully that he requested each of the witnesses who testified to furnish a statement showing the amount of business done by Hernreich while employed as a salesman for the appellant, since the company failed and refused to do this. This is argued as a just cause or reason why the jury may have decided the issues in this case as it did. That may be true, but if so there was no legal evidence to support the verdict. Every item sued upon by the appellant is one that is just and correct and which has been admitted by Hernreich. There is no pleading in this case that suggests the possibility of mistake or fraud. We know of no reason why the company may not have properly answered the questions asked in that respect and there is no justification that because it did not, the items undisputed should not be paid for. There was no cross-complaint pending when this proof was taken to recover for any commissions not credited. We had a recent case with a similar controversy. It was decided contrary to appellee's contention. *Sirman* v. *Sloss Realty Co., Inc.,* 198 Ark. 534, 129 S. W. 2d 602.

The judgment of the circuit court is, therefore, reversed and judgment is entered here for the amount of the indebtedness as stated in the complaint and admitted by the appellee—$921.20—with interest from date of suit.

Holt, J., not participating.